TIMOTHY FELDHEIM *et al.*, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants, v. FRANK L. SIMS *et al.*, on Behalf of Themselves and All Others Similarly Situated, Defendants-Appellees.

First District (4th Division)    No. 1—01—1399

Opinion filed November 15, 2001.

Sachnoff & Weaver, Ltd., of Chicago (Lowell Sachnoff, Barry Rosen, Michael Richman, Edmund McAlister, and Shobha Mahadev, of counsel), for appellants.

Kirkland & Ellis (Garrett Johnson, Robert Kopecky, and Donna Welch, of counsel), and Freeman, Freeman & Salzman, P.C. (Jerrold Salzman, Phillip Stern, and Chris Gair, of counsel), both of Chicago, for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

This interlocutory appeal emanates from the proposed restructuring of the Chicago Board of Trade (CBOT), the largest futures and options exchange in the United States. The named plaintiffs each own "minority" membership interests in the CBOT. Their amended complaint sought declaratory and injunctive relief for themselves and as representatives of a class of all persons or entities who own CBOT minority memberships.

Plaintiffs claimed that under Delaware law, the CBOT full member "majority" owed fiduciary duties to the minority in connection with any vote which affected the minority's ownership interests. Defendants, named individually and as representatives of a class of CBOT full members, unsuccessfully moved to dismiss the amended complaint pursuant to Code of Civil Procedure (Code) sections 2—615 (735 ILCS 5/2—615 (West 2000)) (section 2—615) and 2—619 (735 ILCS 2—619 (West 2000)) (section 2—619). The circuit court subsequently stayed the proceedings and ruled that the dispute should be decided by arbitration. Plaintiffs filed this interlocutory appeal (166 Ill. 2d R.

307(a)(1)), raising as issues whether the circuit court abused its discretion (1) by ruling defendants had not waived their right to arbitration; and (2) by granting defendants' motion to compel arbitration and stay the proceedings.

Before this litigation commenced, on May 16, 2000, a proposed CBOT restructuring report was presented to the CBOT board of directors, which would convert CBOT from its present status as a Delaware not-for-profit corporation to a for-profit stock corporation. This change would require a majority vote of the CBOT membership following the board of directors' approval.[1] CBOT would form a wholly owned, for-profit corporate subsidiary for the purpose of reorganizing the CBOT's electronic trading business. The May 16, 2000, report proposed further that the subsidiary would increase value in current membership interests in the CBOT through a potential, initial public offering. The for-profit corporation would replicate the business of the current CBOT and would remain closely held by the current CBOT membership after allocation of shares in the new company.

An independent allocation committee developed a stock allocation methodology for the proposed, for-profit CBOT that was recommended, reviewed and approved by the CBOT board of directors and will be voted upon by CBOT members as part of the next step of the restructuring plan.[2] Pursuant to this methodology, the full members would receive 88.07% of the shares in for-profit CBOT, and associate

---

[1]CBOT membership presently is comprised of five different classes including full members (1,402 seats), collectively, the majority, and associate members (774 seats), Government Instruments Market (GIMs) (184 seats), Community Options Market (COMs) (643 seats) and Index, Debt and Energy Market (IDEMs) (641 seats), collectively, the minority. According to the CBOT's amended and restated certificate of incorporation, full members are entitled to one vote on all matters that are subject to a vote of the general membership; associate members are entitled to one-sixth of one vote. Holders of GIM, COM and IDEM membership interests have no voting rights. As a result, full members can outvote the minority by a margin of 1,402 to 129 with respect to any matter that is put to a membership vote.

[2]According to the CBOT's restructuring report, in reaching its recommendation, the allocation committee considered a variety of factors in calculating its methodology and gave greater weight to liquidation rights, voting rights and Ceres Trading Limited Partner interest allocation of CBOT members, rather than the market values of CBOT seats prior to the announcement of the restructuring. Similar to voting rights, associate members would receive one-sixth of the liquidation value that full members would collect. GIMs, COMs and IDEMs are entitled to less than associate members upon liquidation. Likewise, minority members are entitled to a similar allocation for Ceres interests. Liquidation and voting rights ratios to which the allocation commit-

members would receive 9.72% of the shares. GIMs would divide 1.16%, COMs would receive 0.57% and IDEMs would share 0.48% of the allocated stock.[3]

On August 11, 2000, plaintiffs filed a one-count complaint for declaratory judgment and injunctive relief, alleging that under Delaware law, the CBOT full member majority owed fiduciary duties to the minority and thereby were precluded from exploiting their control position to their own benefit and to the detriment of the minority and were obligated, as well, to provide the minority with fair value in connection with the restructuring. The complaint further alleged that "the proposed allocation would unfairly benefit the Majority Full Members to the detriment of the Minority Owners," and, "[a]s such, it would be a breach of fiduciary duty for the Majority Members, or any of them, to vote in favor of the proposed allocation in connection with the next phase of the CBOT restructuring." Plaintiffs sought a declaration that the allocation methodology was unfair and inequitable, an injunction to prohibit the majority members from voting in favor of any allocation based on that methodology and a declaration as to a fair and equitable methodology and allocation of shares.

Defendants thereafter successfully moved for substitution of judge. 735 ILCS 5/2—1001 (West 2000). Defendants subsequently moved to dismiss plaintiffs' complaint pursuant to section 2—615 of the Code for failure to state a claim because plaintiffs' allegations were insufficient, as a matter of law, to establish that the full members had fiduciary obligations to the CBOT's minority members. Defendants filed a second motion to dismiss under Code section 2—619, supported by an affidavit of CBOT's chairman of the board of directors, containing a number of factual assertions related to the merits of the controversy.

Plaintiffs then successfully moved for substitution of judge. 735 ILCS 5/2—1001 (West 2000).

Thereafter, on November 15, 2000, plaintiffs filed an amended complaint, with leave of court, which included more detailed, factual allegations regarding the full members' domination and control over the CBOT. Among the allegations was plaintiffs' claim that the full member majority consistently had used its "overwhelming voting

tee gave greater weight in establishing its methodology already are reflected in the seat value market prices.

[3]On an individual basis, the proposal would allocate shares in for-profit CBOT according to the following ratio: for each five shares allocated to each full member, associate members would receive one share, GIMs would receive 0.5 shares, COMs would receive 0.07 shares and IDEMs would receive 0.06 shares.

power" to dominate and control the corporation.[4] Plaintiffs further asserted that the full members utilized their voting power to enact rules which institutionalized the full members' control over the CBOT.

Plaintiffs again successfully moved for substitution of judge. 735 ILCS 5/2—1001 (West 2000).

On January 9, 2001, defendants filed new and separate motions to dismiss pursuant to sections 2—615 and 2—619 of the Code. In their section 2—615 motion, defendants argued that plaintiffs failed to allege any facts to support the conclusional allegation that CBOT's full members owe fiduciary duties to associate members and membership interest holders in connection with the allocation vote. Specifically, defendants noted that no Delaware law supported plaintiffs' argument that a stockholder can be held to have the fiduciary duties of a "controlling stockholder" based solely on his or her status as the owner of a particular class of stock that comprises a majority of the corporation's outstanding shares.

In their section 2—619 motion, treated by the circuit court as a section 2—619(a)(9) motion (other affirmative matter), defendants provided an affidavit of CBOT's corporate secretary, purporting to disprove an essential and central element of plaintiffs' case, relating to the alleged full members' dominance and control of CBOT's affairs through their potential voting power. Defendants insisted that Delaware law does not recognize the existence of a fiduciary duty in a situation hypothesized by plaintiffs, namely, where individual full members, as a majority, would cast their votes in favor of the restructuring and that individual associate members, as a minority, would vote against the restructuring.

Additionally, defendants contended that plaintiffs' complaint is an attack on the CBOT's board of directors; that plaintiffs do not allege the restructuring is not in the best interests of the CBOT; and that plaintiffs claim only one part of the restructuring approved by the board is unfair, namely, the allocation of shares among its members. Recognizing that plaintiffs could not succeed in an action directly

---

[4]As examples of the full members' voting domination, plaintiffs stated that only full members have been elected as chairman and vice chairman of the CBOT's board of directors, the CBOT's highest elected offices. According to plaintiffs, even the associate members who become CBOT board members are selected by the full members. Pursuant to CBOT rules, the associate members do not elect the associate member representatives on the board of directors; rather, a plurality of votes is necessary to elect associate board members. As a result, plaintiffs assert the full members, who control the voting mechanism, in effect, select the few associate members who are allowed on the CBOT board of directors.

against the board because of the protection afforded by the business judgment rule, defendants argued that plaintiffs instead sued five members who have not yet indicated that they intend to vote for the restructuring. Plaintiffs filed responses to both motions, as well as corrected responses. Defendants filed a reply to plaintiffs' responses.

During the period that the parties were filing and briefing their motions to dismiss and responses and thereafter, plaintiffs served discovery document requests on defendant and third-party subpoenas on CBOT, on certain CBOT directors who served on CBOT's "allocation committee," and on the legal counsel and financial advisors to the allocation committee. CBOT counsel, on behalf of all the subpoenaed parties, filed with the circuit court objections to discovery as being premature on the basis of the pendency of the motions to dismiss. The objections to discovery were overruled by the court on January 9, 2001. Instead, the court ordered the parties to commence "mutual expedited" discovery. Certain defense documents were produced for plaintiffs. Production of other documents was objected to on various additional bases. Plaintiffs subpoenaed certain third parties for oral deposition; however, no depositions were taken prior to the court's granting of the motion to compel arbitration and stay the proceedings.

On January 25, 2001, the circuit court heard argument on defendants' motions to dismiss the amended complaint. The court first denied defendants' section 2—615 motion to dismiss, finding that "the amended complaint, taken as a whole, sufficiently alleges that the defendants have consistently used their voting power to enact rules, regulations and policies that are detrimental to the interests of the minority members," and that "an actual controversy exists as to whether the proposed [restructuring] formula is fair and equitable to the minority members."

The circuit court then addressed defendants' section 2—619 motion, characterizing the motion as having been filed under section 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 2000)) (section 2—619(a)(9)), which allows dismissal of an action on the ground that it is barred by other affirmative matter that avoids the legal effect of the claim. Defense counsel argued, among other things:

> "What we would submit, your Honor, is that under 2—619 we have submitted affirmative matter that refutes what we believe is a legally essential element of [the minority members'] claim. They do not dispute the factual basis of our affidavit and that having refuted an essential element, i.e., that the full members vote together as a cohesive group, it would be incumbent on them to come forward with something that contradicts [that]."

The court held, however, that defendants' evidence did not "constitute

affirmative matter avoiding the legal effect of \*\*\* plaintiff's [*sic*] claim but seeks to contradict the allegations of the amended complaint and is thus not properly considered as a motion, under section 2—619(a)(9)." In denying defendants' section 2—619 motion, the court stated that the motion neither negated the allegations of the complaint nor put the issue to rest.

Nine days later, and for the first time in the proceedings, defendants moved to compel arbitration and stay the court litigation, citing CBOT rules requiring arbitration of this dispute, relying on CBOT Rule 600.00, which provides that "[a]ny controversy between parties who were members at the time such controversy arose and which arises out of the Exchange business of such parties shall, at the request of any such party, be submitted to arbitration in accordance with regulations prescribed by the Exchange." Rule 620.01 gives the CBOT's arbitration committee "jurisdiction to arbitrate all controversies between members arising out of Exchange business," and further states that "[a] member party may compel another member party to arbitrate such controversies by delivering to the administrator a Statement of Claim."

In response to defendants' arbitration motion, plaintiffs argued, among other things, that defendants had waived any right to arbitrate the dispute by submitting to the circuit court affirmative evidentiary matter, under section 2—619, in order to dispose of the case on its merits and put to rest plaintiffs' claims.

On March 23, 2001, the circuit court heard argument on defendants' motion to compel arbitration and stay the proceedings. The court first ruled that defendants had not waived their arbitrability by moving to dismiss plaintiffs' complaint. Next, the court found that the dispute involves an issue arising out of the business of the Exchange, particularly between members, because the arbitration clause was general and nonspecific, and the manner in which the Exchange conducts its business and the allocation of profits fall within scope of the arbitration rules. The court found the case to be arbitrable and sustained defendants' motion to compel arbitration and stay the proceedings.

■ The standard of review in an interlocutory appeal generally is whether the circuit court abused its discretion in granting or denying the requested relief. *Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1092, 746 N.E.2d 294 (2001) (*1000 West Lofts*); *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1189, 738 N.E.2d 610 (2000). A motion to compel arbitration is a prayer for injunctive relief that is treated similarly to a preliminary injunction or a restraining order, and the grant or denial

of such motion is reviewable as an interlocutory appeal, subject to an abuse of discretion standard of review. 166 Ill. 2d R. 307(a)(1); see also *1000 West Lofts*, 319 Ill. App. 3d at 1093.

Plaintiffs assert that defendants waived any right to arbitrate this dispute by submitting affirmative evidence to the circuit court and by asking the court to dismiss plaintiffs' claim on the merits of the case based on that evidence. Plaintiffs claim that the court abused its discretion by finding defendants did not waive their right to arbitrate.

■ In Illinois, arbitration is a favored method of settling disputes. *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 71, 697 N.E.2d 727 (1998) *(IKO Chicago); Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536, 491 N.E.2d 1322 (1986) *(Kostakos); Brennan v. Kenwick*, 97 Ill. App. 3d 1040, 1042, 425 N.E.2d 439 (1981) *(Brennan).* Illinois courts disfavor finding a waiver of arbitration rights. *Kostakos*, 142 Ill. App. 3d at 536; *Brennan*, 97 Ill. App. 3d at 1043. Arbitration allows for the final disposition of disputes in an easier, more expeditious and less expensive manner than by litigation. *IKO Chicago*, 183 Ill. 2d at 71. Nevertheless, a contractual right to arbitration can be waived similarly to any other contract right. *Brennan*, 97 Ill. App. 3d at 1042. Waiver may occur when a party conducts itself in a manner inconsistent with the arbitration clause, thereby demonstrating an abandonment of that right. *Applicolor, Inc. v. Surface Combustion Corp.*, 77 Ill. App. 2d 260, 222 N.E.2d 168 (1966) *(Applicolor); Kostakos*, 142 Ill. App. 3d at 536; *Gateway Drywall & Decorating, Inc. v. Village Construction Co.*, 76 Ill. App. 3d 812, 816, 395 N.E.2d 613 (1979) *(Gateway).* A party's course of action amounts to waiver when it submits arbitrable issues to a court for decision on the substantive merits of the cause. *Atkins v. Rustic Woods Partners*, 171 Ill. App. 3d 373, 378, 525 N.E.2d 551 (1988) *(Atkins); Kostakos*, 142 Ill. App. 3d at 536; *Applicolor*, 77 Ill. App. 2d at 267.

It must be noted, first, that defendants' section 2—619 motion to dismiss asserts as fact, supported by affidavit, that it demonstrated "the untruth of plaintiffs' allegation" of defendants' "actual domination and control over CBOT's affairs" and that defendants control the elections as a cohesive group; and defendants challenge plaintiffs' conclusion that a fiduciary relationship thereby exists between defendants as the majority and plaintiffs as the minority. Defendants' motion purports to present "concrete evidence that [defendants] do not vote as a cohesive group." As previously observed, defendants' motion was treated by the circuit court as having been brought under section 2—619(a)(9), which provides for dismissal where "[t]he claim asserted against defendant is barred by other affirmative matter avoid-

ing the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2000).

■ A motion brought under section 2—619 must satisfy a rigorous standard and can be granted only where "no set of facts can be proven that would support the plaintiff's cause of action." *Nosbaum v. Martini*, 312 Ill. App. 3d 108, 113, 726 N.E.2d 84 (2000). Moreover, on such motion, the movant must present "affirmative matter" that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. *Fancher v. Central Illinois Public Service Co.*, 279 Ill. App. 3d 530, 534, 664 N.E.2d 692 (1996) (*Fancher*). The movant cannot merely rely upon evidence offered to refute well-pleaded facts, since well-pleaded facts must be taken as true for the purposes of a motion to dismiss under section 2—619(a)(9). *Fancher*, 279 Ill. App. 3d at 534; see also *Prompt Air, Inc. v. Firewall Forward, Inc.*, 303 Ill. App. 3d 126, 128, 707 N.E.2d 235, 237 (1999). A section 2—619 motion may not be utilized merely to challenge the essential factual allegation of plaintiffs' cause of action (*Provenzale v. Forister*, 318 Ill. App. 3d 869, 879, 743 N.E.2d 676 (2001) (*Provenzale*)); where defendants dispute factual allegations in a complaint, they should do so in a motion for summary judgment. *Provenzale*, 318 Ill. App. 3d at 879. Motions for summary judgment generally seek a final disposition of litigation based upon affirmative facts shown, as in the section 2—619(a)(9) motion presented in the instant case.

In *Applicolor*, defendants first unsuccessfully sought removal of the lawsuit to federal court. Prior to remand, however, to the state court, defendants moved for summary judgment, claiming their entitlement "to judgment as a matter of law," on which the federal court did not rule. Defendants made no reference to their right to arbitration. The *Applicolor* defendants renewed their summary judgment motion in the state court, supported by affidavits, without mentioning their right to arbitration. *Applicolor*, 77 Ill. App. 2d at 264. The *Applicolor* court observed that the important purpose of summary judgment is the disposition of litigation when the disputed issue is exclusively one of law, as where there is no genuine issue of material fact (77 Ill. App. 2d at 266), and found that had defendants' motion been granted as a matter of law, that ruling would have disposed of the litigation completely; therefore, defendants were held to have effectively waived their right to arbitration of the claim or controversy presented. 77 Ill. App. 2d at 267.[5]

Here, defendants' motion to dismiss, although brought as a mo-

---

[5]Defendants refer to *Applicolor* as underscoring the distinction between a

tion to dismiss under section 2—619 instead of summary judgment under section 2—1005 (735 ILCS 5/2—1005 (West 2000)), sought from the circuit court the same relief as a matter of law. Defendants sought a dismissal of plaintiffs' lawsuit not only because defendants allegedly owed no fiduciary duty to plaintiffs as controlling stockholders, but plaintiffs identified no evidence of defendants having exercised control over the restructuring transaction at issue in the case; nor did plaintiffs show evidentiary support for their claim that defendants breached any duty to them, even if a duty existed. Finally, defendants sought dismissal because their own supporting affidavit demonstrated that the recent member vote to elect a new chairman of the CBOT establishes that full members do not vote as a cohesive group as plaintiffs claimed. Clearly, defendants were seeking a final disposition of the litigation based upon affirmative facts shown, which demonstrated conduct inconsistent with having their principal issue decided by arbitration.

Another example of waiver of the right to arbitration following the filing of a motion to dismiss is found in *Atkins*. There, defendants did not raise the question of arbitration until their motion to dismiss count III of plaintiffs' second amended complaint had been granted and then reversed on appeal. *Atkins*, 171 Ill. App. 3d at 379. As noted by the appellate court there, and equally applicable here, defendants' participation in the litigation was not merely responsive and its motions were not filed solely to protect its rights from litigation. *Atkins*, 171 Ill. App. 3d at 379.

Federal decisions further exemplify the principle. In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389 (7th Cir.

motion to dismiss and a motion for summary judgment. *Applicolor*, 77 Ill. App. 2d at 265. As the court in *Gateway* explained, however, the *Applicolor* court did not intend to limit the scope of what conduct constitutes a submission of an arbitrable issue to the courts only to summary judgment motions. *Gateway*, 76 Ill. App. 3d at 816. Of further interest is the history showing that Illinois courts repeatedly have characterized section 2—619(a)(9) motions as similar to summary judgment motions. See *Wilk v. 1951 W. Dickens, Ltd.;* 297 Ill. App. 3d 258, 261, 696 N.E.2d 756 (1998) (a motion pursuant to section 2—619(a)(9) is similar to a motion for summary judgment, especially where a determination of fact is involved); *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444 (1984) (a section 2—619 motion is a fact motion that amounts essentially to a summary judgment procedure); *Bryant v. Fox*, 162 Ill. App. 3d 46, 50, 515 N.E.2d 775 (1987) (a section 2—619 motion should be granted where the evidence before the court either raises no issues of material fact or where crucial issues of material fact are refuted by an affirmative matter).

1995) (*Cabinetree*), plaintiff, a franchised distributor of kitchen and bath cabinets, brought an action against defendant, a franchisor, charging that the franchisor had terminated the franchise in violation of Wisconsin law. Defendant removed the case to a federal district court in Wisconsin and, thereafter, discovery began and a trial date was set. Defendant moved to stay further proceedings pending arbitration of the parties' dispute, which the district court denied. On appeal, the court held that an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute was a presumptive waiver of the right to arbitrate. *Cabinetree*, 50 F. 3d at 390.

In *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 588 (7th Cir. 1992) (*St. Mary's Medical Center*), plaintiff sued defendant for breach of warranty in a construction contract. Defendant filed a motion to dismiss and, alternatively, a motion for summary judgment, never mentioning its right to arbitration during the pendency of the motions, as in the present case. Thereafter, defendant moved to compel arbitration and stay the case. Plaintiff resisted on the ground that defendant had waived its right to arbitration. The district court agreed that defendant waived arbitration and defendant appealed. The *St. Mary's Medical Center* court affirmed the district court's decision, finding that during the 10 months after it was sued, defendant did more than just "weigh its options," but participated in the litigation by filing its motion to dismiss or, alternatively, a motion for summary judgment, never mentioning arbitration until after it lost its motions. The *St. Mary's Medical Center* court noted that "[e]specially telling was [defendant's] motion to dismiss. Submitting a case to the district court for decision is not consistent with a desire to arbitrate. A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum." 969 F.2d at 589.[6]

■ Summarizing, in the instant case, the circuit court denied

---

[6]Defendants seek to distinguish *St. Mary's Medical Center* by arguing that the court did not hold that filing a motion to dismiss constitutes waiver; rather, defendant in that case also had moved for summary judgment. Nevertheless, the *St. Mary's Medical Center* court focused on defendant's motion to dismiss in its analysis, noting that the motion asserted a one-year contractual limitation period barred plaintiff's claim and that plaintiff had not raised a *prima facie* case. A decision in defendant's favor on either issue would have ended the case in the same manner as a judgment entered after a trial. The court stated that although both issues were appropriate for arbitration, plaintiff voluntarily chose to litigate and, since defendant also chose to litigate, it, in essence, agreed with plaintiff to litigate rather than arbitrate. *St. Mary's Medical Center*, 969 F.2d at 591.

defendants' section 2—615 motion, which sought to litigate the merits of the dispute as to whether they owed plaintiffs a fiduciary duty when voting for the restructuring of the CBOT, and denied their section 2—619(a)(9) motion, which tried to demonstrate that their evidence, in the form of a supporting affidavit, proved the untruth of plaintiffs' underlying assertion that full members vote as a cohesive group. Although the court found that defendants' section 2—619 motion neither negated the allegations of plaintiffs' complaint nor put the issue to rest, defendants were banking on a decision in their favor involving this factual issue, which would have ended the case as effectively as judgment entered after submission of the controversy to a trial. Defendants here, in the same way as defendants in *Applicolor*, *Atkins, Cabinetree* and *St. Mary's Medical Center*, did more than weigh their options; they voluntarily participated in the litigation, never raising their right to arbitrate until after their motions were denied. Defendants' actions in submitting substantive issues to the circuit court for determination manifested their intent to abandon their right to arbitrate. The law does not permit them to forum shop until they receive the desirable decision.

Accordingly, the circuit court abused its discretion by ruling defendants did not waive their right to arbitrate this dispute. The cause must be reversed and remanded for further litigation proceedings.

Reversed and remanded.

HOFFMAN, P.J., and THEIS, J., concur.