SIXTH DIVISION
September 7, 2007

No. 1-06-3274


GLAZER'S DISTRIBUTORS OF ILLINOIS, )    Appeal from the Circuit
INC., an Illinois Corporation,    )    Court of Cook County.
                                           )
     Plaintiff-Appellant,        )
                                           )
     v.                           )    No. 06 CH 10744
                                           )
NWS-ILLINOIS, LLC, an Illinois    )
Limited Liability Company, and    )
NATIONAL WINE AND SPIRITS, INC.,   )
an Indiana Corporation,          )    Honorable
                                         )    Mary Anne Mason,
     Defendants-Appellees.      )    Judge Presiding.


JUSTICE O'MALLEY delivered the opinion of the court:

The issues presented in this interlocutory appeal involve plaintiff Glazer's Distributors of Illinois, Inc.'s (Glazer's) unsuccessful attempt to compel arbitration of its claims against defendant NWS-Illinois, LLC (NWS LLC), a subsidiary of defendant National Wine & Spirits, Inc., pertaining to NWS LLC's alleged breaches of two contracts.[1] In denying Glazer's request to compel arbitration, among other things, the circuit court determined that Glazer's claims were based on a contract that did

---

[1]For purposes of clarity, we will collectively refer to the defendants NWS-Illinois, LLC, and National Wine & Spirits, Inc., as "NWS LLC." However, as necessary and relevant, we will identify the parties individually.

not contain an arbitration provision, the parties did not agree to arbitrate the claims at issue, and Glazer's waived its right to arbitrate.

On appeal, Glazer's challenges the circuit court's order that (1) denied Glazer's motion to compel arbitration; (2) granted NWS LLC's motion to stay arbitration; (3) granted NWS LLC's motion to dismiss Glazer's amended motion that sought, in pertinent part, a claim for arbitration.  Glazer's also seeks our review of the circuit court's refusal to allow Glazer's to obtain arbitration-related discovery and presentation of witnesses.[2]

For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

In 2002, Glazer's, an Illinois corporation, sought to become a participant in the Illinois wholesale distribution market for alcoholic and nonalcoholic beverages.  At that time, NWS LLC, an Illinois limited liability company, operated a wholesale

---

[2]As represented by Glazer's, these decisions occurred on the record on August 1, 2006, and September 5, 2006, respectively. NWS LLC filed in this court a motion to dismiss Glazer's challenges to those decisions based on lack of appellate jurisdiction.  On February 5, 2007, this court denied NWS LLC's motion.

distribution business for wine, spirits, and other beverages in Illinois.

In February 2003, as a result of negotiations among those parties, Glazer's and NWS LLC entered into a management services agreement that created an agreement whereby Glazer's would provide assistance, management, and consultation services for NWS LLC's wholesale distribution business in Illinois. Under that agreement, in pertinent part, Glazer's received 50% of the profits and shared 50% of the costs associated with that business arrangement.

## A. Contracts at Issue on Appeal

Subsequently, on December 1, 2003, Glazer's and NWS LLC contemporaneously entered into two contracts, namely, a 20-page management services agreement (MSA) and a 43-page conditional sales agreement (CSA). Both of these contracts are at issue on appeal.

### 1. The MSA

The MSA was entered into by NWS LLC and Glazer's. The MSA identified NWS LLC as an indirect subsidiary of National Wine & Spirits, Inc. (an Indiana corporation), and identified Glazer's as a wholly owned subsidiary of Glazer's Wholesale Drug Company, Inc. (a Texas corporation). The parent corporations guaranteed performance of their respective subsidiaries. James LaCrosse

signed the MSA on behalf of NWS LLC and National Wine & Spirits, Inc., and Bennett Glazer signed the MSA on behalf of Glazer's and Glazer Wholesale Drug Company, Inc.

Under the MSA, Glazer's received 80% of the profits and shared 80% of the costs of the contracted business arrangement with NWS LLC.  Glazer's agreed to provide NWS LLC with general management and consulting services with respect to marketing alcoholic beverages, provide assistance and guidance in obtaining additional lines and brands of products, and maintain existing and establish new relationships with NWS LLC's suppliers.

The MSA established a six-member steering committee that would coordinate the business arrangement between NWS LLC and Glazer's in order to maximize the growth opportunities and profitability of that arrangement, and identified a number of duties and responsibilities of the steering committee.

NWS LLC retained all powers and authorities with respect to the operation, management and administration of the business that were not expressly granted to the steering committee.  In addition, among other things, NWS LLC expressly retained "the sole and exclusive right, power and authority *** to enter into, modify, terminate, or otherwise extend any distribution contracts" under paragraph 12(a) of the MSA.

The MSA further provided that NWS LLC and Glazer's intended

to contemporaneously enter into a conditional sales agreement (CSA, detailed *infra*), which would allow for the organization of a new Illinois limited liability company, referred to as Newco, that would be jointly owned by NWS LLC and Glazer's.

In relevant part, the MSA also contained a "Buy/Sell" provision in paragraph 16, which allowed either NWS LLC or Glazer's to make an offer to buy the entire interest of the other party. Specifically, if Glazer's sought to purchase the interest of NWS LLC, then the parties would form Newco in compliance with the CSA, and Glazer's would pay NWS LLC a specified amount to be calculated from various factors.

The MSA chose Illinois law as its governing law and fixed the venue in Cook County, Illinois. The MSA permitted attorney fees for a prevailing party if "any legal action or any arbitration or other proceeding is brought for enforcement" of the MSA. However, the MSA neither provided for nor discussed an express arbitration provision.

## 2. The CSA

Contemporaneously with the signing of the MSA on December 1, 2003, Glazer's and NWS LLC entered into the aforementioned CSA. LaCrosse signed the CSA on behalf of NWS LLC, and Glazer signed the CSA on behalf of Glazer's.

The CSA outlined Glazer's option to acquire an interest in

5

certain assets of NWS LLC through the formation of a new entity to be called Newco. Under the CSA, upon Glazer's exercise of its option, NWS LLC would transfer certain of its assets to Newco on a specified "closing date." These assets included, in pertinent part, "all supplier, distributor, and wholesaler appointment agreements *** with which NWS LLC is doing business on the Closing Date, if assignable and transferable to [Newco] (the 'Supplier Contracts')." Ultimately, Glazer's would own an 80% interest in Newco, and NWS LLC would own a 20% interest in Newco. The CSA required NWS LLC to use its commercially reasonable best efforts to obtain the consent of its suppliers to the transfer of their contracts to Newco.

The CSA chose Illinois law as its governing law and provided that the parties agreed to settle any legal proceedings in Illinois courts, except as otherwise provided in the arbitration provision contained in section 9.5.

Section 9.5 of the CSA, titled "Dispute Resolution," contained the following arbitration provision:

"Except as otherwise provided in this Agreement or the MSA, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, including the scope and applicability of this Agreement

6

> to arbitrate, shall be settled by
> arbitration.

***

> Notwithstanding anything to the contrary
> contained in this Section 9.5, but without
> limiting the power of arbitrators to grant
> similar remedies that may be requested by a
> party in dispute, any party shall have the
> right to proceed in any court of proper
> jurisdiction to obtain injunctive or other
> relief, enforce a judgment rendered by an
> arbitrator, or obtain any other similar or
> ancillary remedies."

The CSA's arbitration provision provided that arbitration proceedings would be administered by the American Arbitration Assocation (AAA) in accordance with its rules. The CSA's arbitration provision further provided that the arbitration hearings would be conducted either in Indianapolis, Indiana, if Glazer initiated them, or Dallas, Texas, if NWS LLC initiated them.

### B. Glazer's Original Complaint

On May 30, 2006, Glazer's filed in the circuit court a complaint seeking injunctive relief, declaratory judgment, and,

in the alternative, a claim for breach of contract. Also on May 30, 2006, Glazer's filed a verified motion for temporary restraining order.

In their complaint, Glazer's alleged that on May 18, 2006, NWS LLC informed Glazer's that NWS LLC had entered or intended to enter into agreements to sell a number of NWS LLC's distribution contracts in Illinois. The next day, on May 19, 2006, Glazer's responded and informed NWS LLC that its sale of any distribution contracts would be a breach of both the MSA and the CSA. Glazer's demanded NWS LLC to rescind or terminate any such agreements to sell its distribution contracts. Glazer's further notified NWS LLC that Glazer's was exercising its right to purchase the assets of NWS LLC pursuant to the CSA.

Glazer's requested the court to enter a temporary restraining order enjoining NWS LLC's "threatened sale" of its Illinois distribution contracts. Glazer's further requested the court to enter an order that preliminarily and permanently enjoined NWS LLC from selling its distribution contracts, and declared that the MSA and CSA prohibited NWS LLC from selling such contracts. In the alternative, Glazer's requested the court to award Glazer's all damages resulting from NWS LLC's breach of the MSA and the CSA.

On June 2, 2006, in a written order, the circuit court

8

denied Glazer's motion for a temporary restraining order. In relevant part, the circuit court found that the agreements between Glazer's and NWS LLC did not prohibit NWS LLC from selling its distribution contracts.

On June 8, 2006, this court denied Glazer's petition for temporary restraining order and a motion for stay of sale pending our ruling on that petition.

On June 29, 2006, NWS LLC filed a motion to dismiss Glazer's May 2006 complaint, arguing, in pertinent part, that neither the MSA nor the CSA prohibited NWS LLC from selling its distribution contracts.

### C. Glazer's Seeks Arbitration

The next day, June 30, 2006, Glazer's filed an arbitration demand with the American Arbitration Association (AAA), raising 10 separate counts, including claims for breach of contract under the MSA and CSA. Glazer's named as respondents NWS LLC, LaCrosse, National Wine & Spirits Inc., and National Wine & Spirits Corp.

Specifically, Glazer's alleged that in May 2006, NWS LLC had negotiated with the Anheuser-Busch distribution network to sell NWS LLC's distribution rights for the Grolsch and Goose Island beer brands for $9.1 million. Glazer's contended that this sale occurred "despite Glazer's objections and despite the fact that

the agreement between NWS [LLC] and Glazer's required that those assets be maintained for the benefit of the joint venture."

On July 6, 2006, NWS LLC and National Wine & Spirits, Inc., joined by LaCrosse and National Wine & Spirits Corp., filed in the circuit court a motion to stay arbitration.[3] In that motion to stay, the parties argued, among other things, that Glazer's had waived any right it had to arbitration the issue and that its filing of an arbitration demand was an impermissible attempt at forum shopping.

On July 18, 2006, the circuit court entered an order that stayed the arbitration and granted Glazer's leave to amend its complaint. The court further ordered Glazer's to "notify [the] AAA that the pending arbitration will not proceed until the court has ruled on the sufficiency of the amended complaint, and will not waive the parties AAA deadlines pending this resolution."

On August 3, 2006, Glazer's filed two pleadings in the circuit court: (1) a first amended complaint (amended complaint); and (2) a motion to compel arbitration and stay proceedings and response to NWS LLC's motion to stay arbitration.

In its amended complaint, Glazer's brought a claim for

---

[3]The circuit court denied Glazer's motion to strike the motion to stay as is pertained to LaCrosse and National Wine & Spirits Corp, finding that both parties were properly before it.

arbitration, and, alternatively, claims for preliminary injunction, and constructive trust. Glazer's alleged that NWS LLC sold its Illinois distribution rights for the Goose Island and Grolsch brands to Anheuser-Busch for $9,1 million on June 5, 2006. Glazer's further alleged that NWS LLC intended to sell additional beer distributor contracts. According to Glazer's, in July 2006 the buy/sell provision of the MSA had been "triggered" by actions of Glazer's and NWS LLC, which prevented NWS LLC from subsequently selling its distribution contracts.

In regard to its claim for arbitration, Glazer's asserted that "[t]his dispute arises out of and relates to the CSA and MSA, which were executed at the same time and are intertwined, and is subject to the arbitration provisions contained therein." Consequently, according to Glazer's, NWS LLC was obligated to submit to arbitration to resolve the dispute regarding NWS LLC's sale of its distribution contracts "because a binding agreement exists between Glazer's and [NWS LLC] providing for the mandatory settlement of disputes through arbitration."

On August 18, 2006 NWS LLC filed a motion to dismiss Glazer's amended complaint.

On October 4, 2006, Glazer's filed in the circuit court an emergency motion for a temporary restraining order to enjoin NWS LLC from selling additional distribution contracts. Glazer's

explained that between July 2006 and August 2006, it had exercised its right to purchase NWS LLC's entire interest pursuant to the buy/sell provision of the MSA, which resulted in NWS LLC being barred from subsequently selling its distribution contracts.

On October 6, 2006, the circuit court granted Glazer's emergency motion for a temporary restraining order and enjoined NWS LLC from selling any of the identified distribution contracts until the hearing on Glazer's amended motion to compel arbitration.

Following a hearing on October 23, 2006, where both parties presented extensive arguments, the circuit court entered a written order.  In relevant part, the court (1) found that the issues were governed by the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq*. (West 2006)); (2) denied Glazer's motion to compel arbitration and stay proceedings; (2) granted NWS LLC's motion to stay arbitration; and (3) granted NWS LLC's motion to dismiss Glazer's amended complaint, including Glazer's claim for arbitration.

Specifically, in denying Glazer's motion to compel arbitration, the court found that Glazer's claims were all based on the MSA, which did not contain an arbitration provision, and Glazer's had waived its right to arbitrate by filing its first

12

complaint, which did not seek arbitration. In granting NWS LLC's motion to dismiss the amended complaint, the court found that dismissal of count I of the amended complaint seeking arbitration was warranted based on the court's ruling to deny Glazer's motion to compel arbitration. In addition, the court further concluded that LaCrosse and National Wine & Spirits Corp. were not signatories or parties to the agreements and that National Wine & Spirits, Inc., was not a signatory to the CSA.

On November 20, 2006, Glazer's filed an interlocutory appeal seeking review of the circuit court's October 23, 2006, order.

ANALYSIS

On appeal, Glazer's argues that the circuit court erred when it denied Glazer's motion to compel arbitration, granted NWS LLC's motion to stay arbitration, and granted NWS LLC's motion to dismiss Glazer's claim seeking arbitration in Glazer's amended complaint (count I).[4] Glazer's also seeks our review of the circuit court's refusal to allow Glazer's to obtain arbitration-related discovery on August 1, 2006, or to present witnesses in support of its arbitration rights on September 5, 2006.

Glazer's requests that this court (1) reverse and vacate the

---

[4]Regarding the dismissal of its amended complaint, in its notice of appeal, Glazer's appeals only the court's dismissal of count I, which is the claim for arbitration.

13

1-06-3274

circuit court's order; (2) direct NWS LLC, National Wine & Spirits, Inc., National Wine & Spirits Corp., and LaCrosse to proceed to arbitrate all claims; (3) alternatively, if this court determines that further evidence is needed with respect to whether LaCrosse and National Wine & Spirits Corp. are bound by the arbitration provision, order those parties to be subject to expedited arbitration-related discovery and stay the case pending such discovery; and (4) stay the litigation pending a decision by the AAA.

## A. Jurisdiction

As a preliminary matter, we note that the parties raised jurisdictional issues in their pleadings filed in this court while this appeal was pending, which arise from NWS LLC's attempt to dismiss certain of Glazer's claims on appeal based on lack of appellate jurisdiction.[5] The parties correctly agree that this court, pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), has jurisdiction to review the circuit court's order denying Glazer's motion to compel arbitration and granting NWS LLC's motion to stay arbitration. See, e.g., Weiss v. Waterhouse

_____

[5]Although, during the pendency of this appeal, this court denied NWS LLC's motion challenging appellate jurisdiction over certain of Glazer's claims, we nonetheless choose to revisit these jurisdictional issues in our opinion.

14

1-06-3274

Securities, Inc., 208 Ill. 2d 439, 448 (2004) (denial of motion to compel arbitration appealable under Supreme Court Rule 307(a)(1)).

However, NWS LLC argues that Supreme Court Rule 307(a)(1) does not confer jurisdiction upon this court to review both (1) the circuit court's dismissal of Glazer's claim seeking arbitration (count I of Glazer's amended complaint) and (2) the circuit court's refusal to allow Glazer's to obtain arbitration-related discovery or to present witnesses in support of its arbitration rights.

### 1. Court's Dismissal of Glazer's Claim Seeking Arbitration in the Amended Complaint

First, we find that we have jurisdiction to review the circuit court's dismissal of Glazer's claim seeking arbitration in Glazer's amended complaint (count I).

As our supreme court has recognized, when determining whether a circuit court's order or ruling is an appealable injunctive order under Supreme Court Rule 307(a)(1), "'we look to the substance of the action, not its form. *** Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else.'" People v. Phillip Morris Inc., 198 Ill. 2d 87, 101 (2001), quoting In re A Minor, 127 Ill. 2d 247, 260 (1989). Here, the circuit court's

15

dismissal of Glazer's claim seeking arbitration is essentially the same action as the court's denial of Glazer's motion to compel arbitration, which NWS LLC concedes is properly appealable under Rule 307(a)(1). Accordingly, we find that we have jurisdiction under Supreme Court 307(a)(1) to review the circuit court's dismissal of Glazer's claim seeking arbitration where it also denied Glazer's motion to compel arbitration.

2. Court's Refusal to Allow Glazer's to Obtain Arbitration-Related Discovery or Present Witnesses

Second, we find that we have jurisdiction to review the circuit court's refusal to allow Glazer's to obtain arbitration-related discovery or to present witnesses in support of its arbitration rights.

We agree with Glazer's position that Rule 307(a)(1) provides this court with jurisdiction to consider those actions by the circuit court because Rule 307 allows this court to review any prior error that bears directly upon the question of whether an order on appeal was proper. See In re Marriage of Ignatius, 338 Ill. App. 3d 652 (2003); Sarah Bush Lincoln Health Center v. Berlin, 268 Ill. App. 3d 184 (1994). Here, it is logical to conclude that the circuit court's refusal to allow Glazer's to obtain arbitration-related discovery or to present witnesses in support of its arbitration rights impacts the propriety of the

16

court's determination that Glazer's was not entitled to arbitration and denial of Glazer's motion to compel arbitration. Similarly, the circuit court's decision regarding arbitration-related discovery and witness testimony pertaining to arbitrability of claims is also "intertwined" with the court's denial of Glazer's motion to compel arbitration. See Weiss, 208 Ill. 2d at 448 (discussing the "intertwined" nature of pleadings in the context of jurisdiction under Supreme Court Rule 307(a)(1)).

In regard to NWS LLC's positions arguing against appellate jurisdiction on these particular issues, we observe that the majority of NWS LLC's arguments involve an analysis of the underlying merits of Glazer's claims, including potential waiver based on a purportedly inadequate record and insufficient legal basis to support those claims. However, when we address the threshold issue of our jurisdiction to consider certain claims brought on appeal, we are not concerned with the underlying merits of those claims.

B.  Federal Law or State Law

Having found that we have jurisdiction to consider Glazer's claims, we now turn to the parties' disagreement over whether the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2000) or the Illinois Uniform Arbitration Act (Act) (710 ILCS 5/1 *et seq.*

17

1-06-3274

(West 2006)) applies to the issues presented in this case.

Glazer's argues that the FAA and corresponding federal law apply because the arbitration provision in the CSA involves interstate commerce where the CSA requires NWS LLC to sell, transfer, and assign certain assets to Glazer's out-of-state corporate parent, Glazer Wholesale Drug Company, Inc. Glazer's further argues that interstate commerce is implicated because two out-of-state corporate parent companies are guarantors to the MSA and receive payments under that agreement, and the buy/sell provision of the MSA "contemplates the transfer of assets to a subsidiary [Glazer's] of an out-of-state company based in Dallas, Texas - Glazer Wholesale Drug Company, Inc."

NWS LLC replies that the Act applies, as the circuit court similarly determined, because both the MSA and CSA contain choice of law provisions selecting Illinois law to govern the contracts.

In circumstances where parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply, even where interstate commerce is involved. Yates v. Doctor's Associates, Inc., 193 Ill. App. 3d 431, 438 (1990), citing Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989). Notably, the United States Supreme Court in Volt concluded that application of a state arbitration law was

18

not preempted by the FAA where the contracting parties had agreed that the contract at issue, including the arbitration provision, would be governed by state law. Volt, 489 U.S. at 470-71, 103 L. Ed. 2d at 494-95, 109 S. Ct. at 1251.

Most significantly, in Yates, as in this case, the parties included a choice-of-law provision selecting state law as the governing law of the contracts, and there was nothing in the record to suggest that the parties did not intend for the choice-of-law provision to apply to the arbitration provision. Yates, 193 Ill. App. 3d at 438. Consequently, in accordance with Volt and Yates, we find that the Act, rather than the FAA, applies to this case because the parties explicitly included a choice-of-law provision selecting Illinois law as the governing law for both the MSA and CSA, and there is nothing in those contracts to support a conclusion that Illinois law was inapplicable to the arbitration provision. See also Bishop v. We Care Hair Development Corp., 316 Ill. App. 3d 1182, 1190 (2000) (discussing Yates and Volt and concluding that the choice of law clause at issue reflected an agreement to arbitrate in accordance with Illinois law).

Glazer's citation to Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 55, 131 L. Ed. 2d 76, 82-83, 115 S. Ct. 1212, 1215 (1995), does not alter our decision. As explained by this

court in <u>Bishop</u>, the <u>Mastrobuono</u> court analyzed a contract that ambiguously provided in its arbitration clause that claims for punitive damages would be arbitrated, but contradicted itself in its choice-of-law provision by selecting New York law, under which punitive damages were prohibited in arbitration. <u>Bishop</u>, 316 Ill. App. 3d at 1190 (discussing <u>Mastrobuono</u>). Ultimately, the <u>Mastrobuono</u> court construed the ambiguity against the drafting party, relied on the FAA presumption that all doubts regarding the scope of arbitration be resolved in favor of arbitration, and concluded that the choice-of-law provision covered the rights and duties of parties, while the arbitration clause covered arbitration. <u>Bishop</u>, 316 Ill. App. 3d at 1191, citing <u>Mastrobuono</u>, 514 U.S. at 64, 131 L. Ed. 2d at 88, 115 S. Ct. At 1219.

Here, unlike <u>Mastrobuono</u>, there is no such ambiguity that would require us to similarly construe the arbitration and choice-of-law provisions contained in the MSA and CSA. More significantly, in <u>Mastrobuono</u>, the United States Supreme Court relied on the FAA presumption liberally favoring arbitration after recognizing that it was possible to interpret the contract's choice-of-law provision in a manner that directly conflicted with the arbitration provision regarding punitive damages, which was an interpretation that the Court found

"untenable." Mastrobuono, 514 U.S. at 63-64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219. In this case, we have no such reason to rely upon the FAA presumption, especially where we have found that the FAA is inapplicable.

### C. Waiver of Right to Arbitration

We next address Glazer's challenge to the circuit court's determination that Glazer's waived its right to compel arbitration.

### 1. Standard of Review

First, we must determine the appropriate standard of review applicable to the circuit's court determination that Glazer's waived its right to arbitration. It is undisputed that this interlocutory appeal was brought pursuant to Supreme Court Rule 307(a)(1), which allows such appeals from orders denying injunctive relief, including a denial of a motion to compel arbitration. See Feldheim v. Sims, 326 Ill. App. 3d 302, 308-09 (2001).

Glazer's maintains that a *de novo* standard applies because the circuit court "made no attempt to look at the actions of the parties by reviewing any disputed facts," did not make any factual findings, did not allow Glazer's to obtain discovery or present witnesses, and made its determination as a matter of law.

NWS LLC maintains that because a motion to compel

21

arbitration is reviewable as an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), the circuit court's decision in that regard is subject to an abuse of discretion standard of review. NWS LLC further maintains that an abuse of discretion standard is appropriate because the determination of waiver involves mixed questions of law and fact.

Our research reveals that the relevant authority is split on the issue of whether an abuse of discretion standard or *de novo* standard applies to cases such as this one. The Second, Third, and Fifth Districts of this court have determined that a *de novo* review is appropriate where the circuit court has determined the issue of waiver of the right to arbitration because the circuit court in such instances reviews undisputed facts and makes a waiver determination as a matter of law. See, e.g., Household Finance Corp. III v. Buber, 351 Ill. App. 3d 550, 553 (2004); LAS, Inc. v. Mini-Tankers, USA, Inc., 342 Ill. App. 3d 997, 1001 (2003); La Hood v. Central Illinois Construction, Inc., 335 Ill. App. 3d 363, 364 (2002).

In contrast, a number of decisions from the First District of this court have determined that an abuse of discretion standard applies to a review of the circuit court's decision regarding waiver of arbitration rights. See, e.g., Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union State Co.,

1-06-3274

358 Ill. App. 3d 985, 994-95 (2005) (NIRC Railroad); Feldheim,
326 Ill. App. 3d at 308-09; Schroeder Murchie Laya Associates,
Ltd. v. 1000 West Lofts, LLC, 319 Ill. App. 3d 1089, 1092-94
(2001) (Schroeder); Bishop, 316 Ill. App. 3d at 1189.

In Schroeder, the court recognized that the circuit court
did not conduct an evidentiary hearing, but explained that "the
[circuit] court must necessarily engage in a factual inquiry to
determine if a party's actions constitute waiver." Schroeder,
319 Ill. App. 3d at 1093. In addition, the court noted that
established precedent provided that appeals brought pursuant to
Rule 307(a)(1) are typically reviewed only for an abuse of
discretion. Schroeder, 319 Ill. App. 3d at 1093. Ultimately,
the Schroeder court adopted an abuse of discretion standard and
declined a *de novo* standard. Schroeder, 319 Ill. App. 3d at
1094. See also NIRC Railroad, 358 Ill. App. 3d at 993-95
(discussing and agreeing with Schroeder); Feldheim, 326 Ill. App.
3d at 308-09 (citing Schroeder with approval).

After having carefully reviewed the aforementioned
decisions, we agree with Schroeder and the similarly decided
cases. In accordance with that authority, we will review the
circuit court's decision that Glazer's waived its right to
arbitration under an abuse of discretion standard. Under that
standard, we must determine whether there is a sufficient showing

23

in the record to sustain the circuit court's decision. NIRC Railroad, 358 Ill. App. 3d at 995; Schroeder, 319 Ill. App. 3d at 1094.

2. Authority to Make Waiver Determination

Second, we consider Glazer's contention that the circuit court did not have the authority to decide the issue of waiver, but instead should have reserved that decision for an arbitration panel.

Most significantly, this court has already explicitly rejected an identical challenge. NIRC Railroad, 358 Ill. App. 3d at 999. Furthermore, in Schroeder, this court determined that a circuit court had the discretion to decide the issue of waiver of arbitration where the party opposing arbitration claimed that the other party had waived its rights to arbitration. Schroeder, 319 Ill. App. 3d at 1095. Here, as in Schroeder, NWS LLC consistently argued in its motion to stay arbitration and in the related underlying proceedings that Glazer's had waived its right to arbitrate. Therefore, in accordance with NIRC Railroad and Schroeder, we find that the circuit court here had the discretion to decide the issue of Glazer's purported waiver of its right to arbitration.

Glazer's reliance on the United States Supreme Court's decision in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,

24

154 L. Ed. 2d 491, 123 S. Ct. 588 (2002), does not alter our conclusion. Notably, Howsam did not hold that issues of waiver must be decided by an arbitrator, but rather concluded that such issues were presumptively reserved for an arbitrator. Howsam, 537 U.S. at 84, 154 L. Ed. 2d at 498, 123 S. Ct. at 592. Moreover, as Glazer's recognizes in its reply brief, courts interpreting Howsam have reached different conclusions regarding the issue of whether waiver should be decided by the court or an arbitrator.[6] Thus, we reject Glazer's position on this issue and reaffirm our reliance on NIRC Railroad and Schroeder.

   3. Finding that Glazer's Waived its Right to Arbitrate

   Having determined that the circuit court had the authority to address the issue of whether Glazer's waived its right to arbitrate and that we will review its decision under an abuse of discretion standard, we now consider Glazer's challenge to the circuit court's finding that Glazer's waived its right to arbitrate by filing its first complaint in the circuit court.

   Specifically, Glazer's argues that (1) the trial court impermissibly failed to make any findings of fact with respect to

_____

   [6]In its reply brief, Glazer's states that "courts interpreting Howsam 'have split on the issue of whether waiver should be determined by the court or the arbitrator.' [Citations.]"

25

waiver; (2) its "limited conduct" in filing preliminary injunction motions and an initial complaint in support of such relief does not waive its right to arbitrate and did not prejudice NWS LLC; and (3) Glazer's actions were consistent both with AAA rules permitting injunctive relief and FAA rules permitting temporary injunctive relief.

In Illinois, courts favor resolution of disputes through the use of arbitration, and although a contractual right to arbitrate can be waived like any other contractual right, Illinois courts disfavor a finding that a party has waived its right to arbitrate. Schroeder, 319 Ill. App. 3d at 1095-96. Thus, waiver of a contractual right to arbitration "is not to be lightly inferred." Atlas v. 7101 Partnership, 109 Ill. App. 3d 236, 240 (1982).

Nevertheless, it is settled that a contractual right to arbitrate can be waived where a party's conduct is found to be inconsistent with the arbitration clause and therefore indicates that the party has abandoned that right. See, e.g., NIRC Railroad, 358 Ill. App. 3d at 996; Feldheim, 326 Ill. App. 3d at 309; Schroeder, 319 Ill. App. 3d at 1096. Accordingly, "in determining whether a party has waived its contractual right to arbitrate, the crucial inquiry is whether the party has acted inconsistently with its right to arbitrate." Schroeder, 319 Ill.

App. 3d at 1098.

Here, after extensively and carefully reviewing the record, we find ample support to sustain the circuit court's judgment and similarly conclude that Glazer's waived its right to arbitrate by filing its original complaint in the circuit court.

The central premise of our conclusion is that Glazer's, which initiated the underlying litigation as a plaintiff, filed its original complaint before the circuit court without making any mention of arbitration and, in fact, sought complete relief before the circuit court to resolve the underlying dispute concerning NWS LLC's allegedly impermissible sale of its distribution contracts.

Specifically, Glazer's requested in its original complaint the court to enter (1) an order "preliminarily and permanently enjoining" NWS LLC from selling the disputed distribution contracts; (2) a declaratory judgment that the MSA "is valid and existing and prohibits [NWS LLC] from selling the [distribution] contracts they own"; (3) alternatively to the declaratory judgment, a judgment in favor of Glazer's and against NWS LLC "for all damages resulting" NWS LLC's alleged breaches of the MSA and CSA; and (4) attorney fees associated with the underlying litigation. Clearly, the relief sought in Glazer's original complaint positively rebuts Glazer's rather disingenuous position

27

on appeal that its original complaint amounted to "limited conduct in filing preliminary injunction motions and an initial complaint in support of such relief."

We also note that Glazer's filed its arbitration demand only after (1) the circuit court denied its request for a temporary restraining order in connection with its original complaint; (2) this court denied its claim for a temporary restraining order in connection with its original complaint; and (3) NWS LLC filed a motion to dismiss Glazer's original complaint. These circumstances suggest, as NWS LLC argued, that Glazer's was engaging in impermissible forum shopping by filing a demand for arbitration after unsuccessfully seeking relief before the circuit court. See Feldheim, 326 Ill. App. 3d at 313 (noting, in the context of arbitration, that "the law does not permit [a party] to forum shop until [it] receive[s] the desirable decision").

Ultimately, it is undeniable that Glazer's submitted arbitrable issues in its original complaint before the circuit court for resolution by that court, namely, whether the MSA and CSA allowed NWS LLC to sell its distribution contracts. As this court has previously determined, "by submitting arbitrable issues for judicial determination, [the party's] participation in the legal forum was inconsistent with [its] contractual right [to

28

arbitrate] and constituted an abandonment of that right." Schroeder, 319 Ill. App. 3d at 1098. Accordingly, we conclude that Glazer's waived its right to arbitrate and the circuit court did not abuse its discretion in reaching the same conclusion.

We are not persuaded by Glazer's arguments against such a conclusion. First, contrary to Glazer's position regarding the circuit court's alleged failure to make findings of fact or explain its findings, the circuit court necessarily had to make certain factual findings before concluding that Glazer's waived its right to arbitrate. See NIRC Railroad, 358 Ill. App. 3d at 996 (reaching same conclusion). More significantly, the circuit court made the following observation during the hearing:

> "Glazer's came in here at the end of May filing a complaint asking this Court to resolve its issues with [NWS LLC]. That complaint was not limited in any matter. It did not reference arbitration, even potentially."

This excerpt demonstrates that the circuit court considered the factual background of this case and identifies the same factor that we relied upon to find that Glazer's waived its right to arbitrate.

Second, contrary to Glazer's characterization of its

original complaint, that complaint did not simply amount to a request for preliminary injunction and a complaint in support of that request. Instead, we reemphasize that Glazer's original complaint sought final and complete relief from the circuit court regarding the ability of NWS LLC to sell its distribution contracts. We disagree with Glazer's assertion that NWS LLC was not prejudiced by the "limited" litigation and short period of time involved in this dispute. To the contrary, NWS LLC was inherently prejudiced by being brought into the litigation, forced to defend against Glazer's claim that NWS LLC was prohibited from selling its distribution contracts, and, upon successfully defending against that litigation, being subjected to a potential arbitration proceeding over an identical dispute involving the distribution contracts.

Third, in regard to Glazer's claim that AAA and FAA rules allow parties to seek temporary injunctive relief in order to preserve the status quo pending arbitration, we again point out that Glazer's did not seek only temporary injunctive relief in its original complaint, nor did Glazer's request injunctive relief in its complaint for the purpose of preserving the status quo until arbitration.

Further, although Glazer's asserts that Illinois law requires a party to allege an underlying substantive action to

assert a motion for temporary restraining order or preliminary injunction, Glazer's original complaint was not framed in that context. Instead, Glazer's sought in its original complaint temporary _and_ permanent injunctive relief, a declaratory judgment, and damages for breach of contract. In other words, Glazer's original complaint did not even mention arbitration, which directly contradicts its position on appeal that its original complaint requested injunctive relief as a means to preserve the controversy for subsequent arbitration.

We disagree with Glazer's contention that _Atlas_ is dispositive of the waiver issue in this case because of the particular distinguishing circumstances present in that case. In stark contrast to this case, after the plaintiff initiated the litigation by filing complaints for injunctive relief, one of the defendants sought to compel arbitration and then the plaintiff sought to compel arbitration. _Atlas_, 109 Ill. App. 3d at 239. The circuit court in _Atlas_ granted both the plaintiff's and defendant's motions to compel arbitration. _Atlas_, 109 Ill. App. 3d at 239. Thus, based on these facts we do not find _Atlas_ to be dispositive of this case.

Finally, to the extent that Glazer's relies upon federal authority regarding arbitration issues, such authority is not particularly persuasive or relevant to this case where we have

determined that Illinois law governs the dispute because both NWS LLC and Glazer's expressly agreed to an Illinois choice-of-law provision in the MSA and CSA, and we have found applicable Illinois authority. See Allstate Insurance Co. v. Lane, 345 Ill. App. 3d 547, 552 (2003) ("Only in the absence of Illinois authority on the point of law in question are we to look to other jurisdictions for persuasive authority").

Because we have determined that the record supports the circuit court's judgment denying Glazer's motion to compel arbitration because Glazer's has waived its right to arbitrate, we affirm the circuit court's judgment on that ground. Our determination that Glazer's has waived its right to arbitration renders moots the remaining issues that Glazer's raises on appeal because each of those claims presupposes that Glazer's is entitled to arbitration. See In re Marriage of Michaelson, 359 Ill. App. 3d 706, 717 (2005) (generally, a court will not review moot issues, and an issue is moot if no actual controversy exists).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

JOSEPH GORDON and McNULTY, JJ., concur.