# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3448

_____

| | | |
|---|---|---|
| Southeastern Stud & Components, Inc., | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| American Eagle Design Build Studios, LLC, | * | |
| | * | |
| | * | [PUBLISHED] |
| Appellant, | * | |
| | * | |
| American Eagle Communities, LLC; Salvatore R. Carabetta; CEI Investment Corporation; Little Rock Family Housing, LLC; Shaw Infrastructure, Inc., | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: June 11, 2009
Filed: December 7, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

American Eagle Design Build Studios, LLC (AEDBS) and Southeastern Stud & Components, Inc. (SES) entered into a Subcontract Work Agreement (Subcontract), which contained an arbitration clause. After a dispute arose, SES filed a lawsuit against AEDBS. Over a year after SES first filed its complaint, AEDBS filed a motion to compel arbitration. The district court[1] denied AEDBS's motion to compel arbitration, and AEDBS now appeals. For the following reasons, we affirm.

I.

AEDBS was the prime contractor constructing housing on an Air Force base in Little Rock, Arkansas. On August 23, 2006, SES and AEDBS entered into the Subcontract, which stated that SES was to provide labor and materials to the housing project. The Subcontract contained an arbitration clause that said, "[a]ny dispute between [SES] and [AEDBS] arising out of this Agreement or breach thereof, . . . may, at the option of [AEDBS], be submitted to arbitration." (J.A. at 486-87.)

A dispute arose involving payment for work performed under the Subcontract. On June 26, 2007, SES filed suit against AEDBS and several other parties. AEDBS did not move to compel arbitration at that time but, over the course of the following year, answered SES's complaint, filed responses and objections to SES's request for production of documents and filed a motion for judgment on the pleadings without raising the issue of arbitration. AEDBS claims that during this period it did not believe it could enforce the arbitration agreement under Arkansas law. On July 15, 2008, SES filed a second amended complaint. At that point, following an unpublished decision by the United States District Court for the Eastern District of Arkansas, AEDBS asserts that it believed it could enforce the arbitration agreement. In its July 29, 2008, answer to AEDBS's second amended complaint, AEDBS raised arbitration

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

as an affirmative defense, and on September 3, 2008, AEDBS filed a motion to compel arbitration. Before the district court, SES argued that the arbitration clause was unenforceable because: (1) there was no mutuality of obligation as the decision to enforce the arbitration clause was left entirely to AEDBS; (2) AEDBS had waived its right to arbitration by participating in the litigation; and (3) SES would be prejudiced by the arbitration.

The district court denied AEDBS's motion to compel arbitration, finding that while the arbitration clause was enforceable despite its lack of mutuality, AEDBS had waived its right to arbitration and SES would be prejudiced by the arbitration. AEDBS appeals, arguing that it did not waive its right to arbitrate the agreement by participating in the litigation.

II.

In reviewing the district court's determination that AEDBS waived its right to arbitrate the agreement, "[w]e review de novo the legal determination of waiver but examine the factual findings underlying that ruling for clear error." Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007).

We note that there is a "'strong federal policy in favor of arbitration,'" such that "'any doubts concerning waiver of arbitrability should be resolved in favor of arbitration.'" Id. (quoting Dumont v. Saskatchewan Gov't Ins., 258 F.3d 880, 886 (8th Cir. 2001)). However, "[a] party may be found to have waived its right to arbitration if it: '(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'" Id. (quoting Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993)).

AEDBS asserts that, at the time SES filed its complaint against AEDBS, it did not believe that it had the right to arbitrate. According to AEDBS, before March

2008, Arkansas law required mutuality of obligation within the contract's arbitration agreement, even if there was sufficient mutuality within the rest of the contract. See Showmethemoney Check Cashers, Inc. v. Williams, 27 S.W.3d 361, 367 (Ark. 2000) ("Given the lack of mutuality to support the arbitration agreement, we hold the arbitration clause contained in the [contract] does not constitute a valid enforceable agreement to arbitrate . . . ."). AEDBS claims that it did not know it had the right to arbitrate until it discovered the March 2008 unpublished opinion, Enderlin v. XM Satellite Radio Holdings, Inc., No. 4:06-CV-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008) (unpublished). In Enderlin, the United States District Court for the Eastern District of Arkansas stated that "Arkansas law requiring mutuality within the arbitration paragraph itself is preempted by the [Federal Arbitration Act] because it places the arbitration clause on unequal footing with other contract terms that do not each have to be mutual." Enderlin, 2008 WL 830262, at *10. Before this, according to AEDBS, it believed the arbitration agreement was invalid because there was no mutuality of obligation. See Appellant's Br. at 18 ("[I]n the face of such adverse case authority, AEDBS did not believe (i.e. 'know') that it had a valid and enforceable right to arbitrate its dispute with SES despite the existence of the arbitration clause within its Subcontract with SES.").

However, as early as 1984 the Supreme Court held that the Federal Arbitration Act (FAA) "preempts a state law that withdraws the power to enforce arbitration agreements." Southland Corp. v. Keating, 465 U.S. 1, 16 n.10 (1984). Over a decade later, the Court again explained that "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)) (internal citations omitted). Thus, pursuant to Supreme Court precedent, it should have been clear to AEDBS that the arbitration agreement was at least arguably enforceable because Arkansas could not have

imposed additional requirements that applied only to arbitration agreements. Moreover, in 2003, five years before Enderlin, the United States District Court for the Western District of Arkansas stated that, "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration." Scherrey v. A.G. Edwards & Sons, Inc., No. 02-2286, 2003 U.S. Dist. LEXIS 11010, at *10 (W.D. Ark. Apr. 15, 2003) (unpublished). Thus, in spite of AEDBS's assertions, Enderlin did not make new law; it merely correctly applied existing law. In fact, Enderlin could not have changed anything as one district court is not bound by the holdings of others, even those within the same district. See, e.g., Gasperini v. Ctr. for Humanities, 518 U.S. 415, 430 n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others."); Jones v. Unum Life Ins. Co. of Am., 486 F. Supp. 2d 864, 867 (E.D. Ark. 2007) ("'[D]istrict court decisions are not treated as binding precedents in other cases. District court rulings have influence only to the extent that jurists in other cases find them convincing.'" (quoting IBM Credit Corp. v. United Home for Aged Hebrews, 848 F. Supp. 495 (S.D.N.Y. 1994))). As the district court correctly noted, "AEDBS was free at any time to make the same argument as the Defendant in Enderlin, but AEDBS did not." Southeastern Stud & Components, Inc. v. Am. Eagle Design Build Studios, No. 4:07CV00593, 2008 WL 4531706, at *2 (E.D. Ark. Oct. 9, 2008) (unpublished). Further, AEDBS drafted the Subcontract containing the arbitration agreement. Cf. Ritzel Commc'ns, 989 F.2d at 969 ("The Goodwin group drafted the Stock Purchase agreement that contains the arbitration provisions, and thus knew of the existing right of arbitration.").

AEDBS points to Ackerberg v. Johnson, 892 F.2d 1328 (8th Cir. 1989), in support of its argument that it did not knowingly waive its right to arbitrate because the "delay in filing a motion to compel arbitration was based on unfavorable or uncertain law." (Appellant's Br. at 22.) In Ackerberg, the defendants failed to file a motion to compel arbitration on a claim related to the Securities Act of 1933, 15

U.S.C. §§ 77a to 77aa, in spite of an arbitration agreement. Ackerberg, 892 F.2d at 1332. At the time the complaint was filed, the issue was controlled by Wilko v. Swan, 346 U.S. 427 (1953), which prohibited arbitration of claims made under the 1933 Act. However, after the complaint was filed, the Supreme Court reversed Wilko in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989). After Rodriguez de Quijas, the defendants moved to compel arbitration on the 1933 Act claims, but the district court held that the defendants waived their right to arbitration by acting inconsistently with their right to arbitration by participating in the litigation process. Ackerberg, 892 F.2d at 1331. We disagreed, explaining that before Rodriguez de Quijas, the defendants correctly relied on Wilko for the proposition that their 1933 Act claims were not arbitrable, and a motion to compel arbitration on those claims would have been futile. Id. at 1332. Because the defendants moved to compel arbitration "as soon as the law appeared to allow an arbitration procedure" and because any motion to compel arbitration prior to that would have been futile, we held that the defendants did not waive their right to arbitrate the 1933 Act claims. Id. at 1333.

AEDBS argues that, like the defendants in Ackerberg, it did not waive its right to arbitrate because it asserted its right to arbitrate "the very day it learned of Enderlin's precedential support for the enforcement of its Arbitration Agreement with SES" (Appellant's Br. at 23), and because any motion to compel arbitration prior to Enderlin would have been futile. However, as discussed above, even prior to Enderlin the law was clear that Arkansas could not have imposed additional requirements that applied only to arbitration agreements. Thus, Enderlin did not decide new law or reverse previous case law as Rodriguez de Quijas did. Instead, as explained above, it merely correctly applied existing law. Contrary to what AEDBS claims, a motion to compel arbitration prior to Enderlin would not have been futile *ab initio*. Thus, AEDBS's reliance on Ackerberg is misplaced. Accordingly, AEDBS knew of its contractual right to arbitration when SES filed the lawsuit in June 2007.

Second, AEDBS acted inconsistently with its existing right to arbitrate. "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'" Lewallen, 487 F.3d at 1090 (quoting Ritzel Commc'ns, 989 F.2d at 969) (alteration in original). "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." Id. While we have not previously clarified explicitly what constitutes a "timely manner" for the purposes of determining whether a party substantially invoked the litigation machinery, in Lewallen we stated that an eleven-month delay was "inconsistent with" a party asserting its "right to arbitrate." Id. at 1092. Here, SES filed its suit on June 26, 2007, and AEDBS did not assert its right to arbitrate until July 29, 2008, a delay of thirteen months. While AEDBS claims that it did not believe it had the right to arbitrate until Enderlin, we have explained that "[t]o safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" Id. at 1091 (quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995)). At the time SES filed its complaint against AEDBS, federal law—including that decided by the Supreme Court—had established that arbitration agreements did not require additional mutuality beyond what was required for the contract as a whole. If AEDBS had done all it could reasonably have been expected to do in making the earliest feasible determination of whether to proceed judicially or by arbitration, see id., it would have discovered that the Supreme Court's previous rulings permitted arbitration agreements even when they did not contain additional mutuality of obligation. Upon discovering this, it would have determined that the arbitration agreement in the Subcontract was valid and enforceable. By failing to do all it could reasonably have been expected to do, AEDBS failed to safeguard its right to arbitration. Accordingly, AEDBS substantially invoked the litigation machinery by moving for judgment in its favor and by failing to move to compel arbitration and stay litigation in a timely manner, and,

by not asserting its right to arbitrate for thirteen months, AEDBS acted inconsistently with its right to arbitrate. See id. at 1090-92.

Third, SES was prejudiced by AEDBS's acts that were inconsistent with exercising its right to arbitration. "A party is so prejudiced when the 'parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts.'" Id. at 1093 (quoting Kelly v. Golden, 352 F.3d 344, 349 (8th Cir. 2003)). Here, SES incurred expense and experienced a substantial delay from the litigation with AEDBS, as SES had to respond to AEDBS's responses and objections to SES's request for production of documents and to AEDBS's motion for judgment on the pleadings, in which AEDBS repeatedly failed to raise the issue of arbitration. While AEDBS was not the only party engaged in the litigation against SES, and because AEDBS failed to raise the issue of arbitration earlier, SES was forced to continue the expense of litigation against AEDBS. Thus, SES suffered prejudice from AEDBS's actions. See Kelly, 352 F.3d at 350 ("Golden was prejudiced by Kelly's delay in seeking arbitration. He incurred expense and experienced substantial delay as a result of the extensive litigation and would be required to extensively duplicate his efforts if he were now required to participate in arbitration.").

Because AEDBS had knowledge of its existing right to arbitrate but acted inconsistently with that right and prejudiced SES by those actions, AEDBS waived its right to arbitration. See Lewallen, 487 F.3d at 1090.

III.

Accordingly, the judgment of the district court is affirmed.

_____