# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789

---

| | |
|---|---|
| Appellate Court Caption | ARIN A . BOVAY, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellees, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0789 |
| Filed | July 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The order denying defendant's motion to compel arbitration of plaintiffs' putative class action alleging that defendant injured plaintiffs by disclosing confidential data to third parties, including the numbers of credit cards defendants had issued to plaintiffs and the balances on those accounts, was affirmed on the ground that defendant's request was untimely and the right to arbitrate had been waived, since defendant had a known right to arbitration when plaintiffs' actions were filed, there was no showing that the assertion of the right to arbitration would have been futile, and defendant's litigation of the case for many years before requesting arbitration prejudiced plaintiffs. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 01-CH-18096, 02-CH-4693, 03-CH-7605 cons.; the Hon. Richard J. Billik, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Francis A. Citera, Jane B. McCullough, and Paul J. Ferak, all of Greenberg Traurig LLP, of Chicago, for appellant.

Ben Barnow, Sharon Harris, and Erich P. Schork, all of Barnow & Associates, P.C., Norman A. Rifkind, Leigh Lasky, and Amelia S. Newton, all of Lasky & Rifkind, Ltd., and William J. Harte, all of Chicago, and Bonny E. Sweeney and Carmen A. Medici, both of Robbins Geller Rudman & Dowd LLP, of San Diego, California, for appellees.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion.

Presiding Justice Lampkin and Justice Gordon concurred in the judgment and opinion.

## OPINION

¶ 1    In this interlocutory appeal brought pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010), defendant Sears, Roebuck & Company (Sears) seeks the reversal of an order of the circuit court of Cook County denying its motion to compel arbitration of claims brought by plaintiffs in a consolidated class action. Sears maintains the circuit court erred in ruling Sears waived its right to arbitrate the claims and untimely demanded arbitration, arguing a United States Supreme Court opinion issued in 2011 represented a significant change in the law justifying its decision to seek arbitration years after plaintiffs filed their respective complaints. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    The limited record on interlocutory appeal submitted by Sears and supplemented by plaintiffs fails to include the plaintiffs' initial complaints in this matter. Nevertheless, the record discloses plaintiffs Arin A. Bovay, Nancy Woods and Elizabeth Turner filed a putative class action complaint against Sears in 2001 (Bovay lawsuit). Plaintiffs Mark Triezenberg and Mary Lawson filed a putative class action complaint against Sears in 2002 (Triezenberg lawsuit). Plaintiffs Patricia Clark, Terrel Gore and Mary Rodriguez filed a putative class action complaint against Sears in 2003 (Clark lawsuit). These complaints, as subsequently amended, each alleged the respective plaintiffs were Sears credit card holders who were injured when Sears unlawfully disclosed confidential data, including credit card numbers and account balances, to third parties. The complaints alleged causes of action including: (1) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2000)); (2) intrusion upon seclusion; (3) public disclosure of private facts; and (4) unjust enrichment. On April 25, 2002, the circuit court entered an order consolidating the Bovay lawsuit with the Triezenberg lawsuit. On May 13, 2003, the

circuit court entered an order consolidating the Clark lawsuit with the Bovay lawsuit.

¶ 4      Depositions of the plaintiffs conducted by Sears disclose each of these named plaintiffs was a Sears credit card holder prior to 2000 through the end of 2003, with the exception of Woods, who stopped receiving credit from Sears in 2000.[1] The credit card agreement between Sears and plaintiffs in effect as of March 2000 provides in part:

"**Section 22. ARBITRATION**. Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise) arising out of, relating to, or in connection with: (a) this Agreement; (b) any prior Agreement you may have had with us ***; (c) the application for the Account, this Agreement or any prior agreement; (d) the relationships which result from this Agreement or any prior agreement (including any relationship with us ***); or (e) the validity, scope or enforceability of this arbitration section or this Agreement or any prior agreement *** shall be resolved, upon your election or our election, by final and binding arbitration before a single arbitrator, on an individual basis without resort to any form of class action, except that each party retains the right to seek relief in a small claims court, on an individual basis without resort to any form of class action, for claims within the scope of its jurisdiction.

Arbitration may be elected at any time, regardless of whether a lawsuit has been filed or not, unless such a lawsuit has resulted in a final judgment or the other party would suffer substantial prejudice as a result of the delay in demanding arbitration. The arbitrator shall be a lawyer or retired judge with not less than 15 years' experience in the practice of law. This arbitration agreement will not apply to claims previously asserted, or which are later asserted, in lawsuits filed before the effective date of this Agreement, but it will apply to all other claims, even if the facts and circumstances upon which the claims are based existed before the effective date of this Agreement ***.

All arbitrations shall be administered by the National Arbitration Forum ('NAF') in accordance with the Code of Procedure in effect at the time the claim is filed ***.

Any arbitration you attend will take place at a location within the federal judicial district that includes your billing address at the time the claim is filed. We will advance either all or part of the fees on your behalf to the NAF and the arbitrator if you send us a written request. The arbitrator will decide whether you, us or any toher party will ultimately be responsible for these fees. You agree to return the amount of any advanced fees as finally allocated by the arbitrator. The arbitrartor shall apply relevant substantive law and applicable statutes of limitation and shall provide written, reasoned findings of fact and conclusions of law.

This arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act ***. If any portion of this arbitration section is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration section ***.

---

[1]In addition, motions filed by the parties indicate Bovay withdrew his claims in 2009 for health reasons.

**YOU UNDERSTAND AND AGREE, AND WE UNDERSTAND AND AGREE, THAT BECAUSE OF THIS ARBITRATION CLAUSE NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS PROVIDED ABOVE OR TO HAVE A JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM**.

**Section 29. GOVERNING LAW**. This Agreement and your Account will be governed by and interpreted in accordance with the laws of the United States and, to the extent governed by state law, the laws of the State of Arizona, regardless of where you live or where you use the Account. This Agreement is entered into in Arizona."

¶ 5    The credit card agreement between Sears and plaintiffs in effect as of March 2003 differs in several respects from the version in effect in 2000. The 2003 agreement places "the establishment, operating, handling or termination of the Account" and "any transaction or attempted transaction relating to the Account" expressly within the scope of the arbitration provision. The arbitrator need only have 10 years' experience in the practice of law. Moreover, the arbitration provision specifies it will not apply to "claims of a class certified prior to the effective date of [the] Agreement." The arbitration provision will apply to all other claims, including class claims not yet certified. In addition, the 2003 version of the credit card agreement further provides that arbitration will be administered by NAF, the American Arbitration Association or JAMS, in accordance with their respective rules.[2]

¶ 6    Furthermore, the 2003 version of the credit card agreement provides:

"Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file; you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for us to do so, or if you ask us in writing and we determine there is a good reason for doing so. Each party will bear the expense of that party's attorneys experts and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines."

¶ 7    Sears answered plaintiffs' complaints, as amended, and asserted affirmative defenses. In the Bovay lawsuit, Sears asserted plaintiffs' claims were barred by: a statute of limitation; *laches*, waiver and estoppel; and various failures to allege sufficient facts to state claims for relief. In the Triezenberg and Clark lawsuits, Sears asserted similar defenses and also asserted the alleged disclosure of customer data was protected by federal law. Sears did not assert a right to arbitration in these answers. Subsequently, plaintiffs further amended their

---

[2]NAF, as noted in the Sears agreements, is an acronym for the National Arbitration Forum. JAMS was an acronym for Judicial Arbitration and Mediation Services, Inc. See http://www.jamsadr.com/about-the-jams-name/.

complaints in all three lawsuits to seek punitive damages. Sears again answered and raised affirmative defenses to the claims for punitive damages, but did not assert a right to arbitrate plaintiffs' claims.

¶ 8        The record on appeal does not contain the motions to dismiss Sears filed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)). The supplemental record on appeal includes a June 9, 2005, order granting the motions to dismiss in part and denying them in part. In the order, the circuit court struck allegations regarding the misappropriation of names and likenesses from the invasion of privacy claim in the Bovay lawsuit. The circuit court also granted the motion to dismiss the breach of contract claims in the Triezenberg and Clark lawsuits without prejudice.

¶ 9        The record on appeal also does not contain plaintiffs' consolidated motion for class certification. The supplemental record on appeal includes a February 19, 2008, order granting plaintiffs' consolidated motion for class certification in part, denying the motion in part, and directing plaintiffs to revise their proposed class definition, which the circuit court found to be overly broad. The supplemental record on appeal also includes an April 7, 2008, order approving a class definition of all persons and entities in the United States, excluding members of a California class action, who, between September 9, 1995, and June 22, 2001, held a Sears credit card and had certain information disclosed to any third-party vendor with whom Sears had agreements under which Sears would receive money, directly or indirectly from sales made by the third parties to Sears credit card holders.

¶ 10        Sears petitioned for review of the circuit court's certification of the class. The petition was denied by this court and later by the Illinois Supreme Court. See *Clark v. Sears, Roebuck & Co.*, 229 Ill. 2d 664 (2008) (table).

¶ 11        The record on appeal does not contain Sears's motion to seek review in this court pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 1, 1994). The supplemental record on appeal, however, includes a January 13, 2009, order denying said motion. The supplemental record on appeal also includes an April 30, 2009, order approving plaintiffs' plan for notice to the class, which included the publication of a press release in one weekend and one weekday edition of the USA Today newspaper, as well as the establishment of a website on the Internet allowing public access to the operative complaints and orders entered in the litigation.

¶ 12        On August 19, 2011, Sears filed a motion to compel arbitration and stay the proceedings pursuant to section 3 of the Federal Arbitration Act (FAA) (9 U.S.C. § 3 (1994)). Sears asserted the United States Supreme Court decision in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740 (2011), established for the first time that Sears had a known, existing right to compel arbitration of plaintiffs' individual claims and avoid class arbitration. According to the motion, Sears served demands for arbitration on plaintiffs on August 10, 2011, and was notified of plaintiffs' refusal to arbitrate on August 17, 2011.

¶ 13        Plaintiffs filed a response in opposition to the motion to compel arbitration on September 27, 2011. Plaintiffs argued Sears waived any right to arbitration by actively and aggressively litigating these cases for nearly a decade. Plaintiffs also argued Sears could not demonstrate asserting the right to arbitrate would have been futile under Illinois or Arizona law during

the period prior to the *Concepcion* decision. Plaintiffs further argued *Concepcion* did not excuse Sears's waiver of arbitration. In addition, plaintiffs argued: (1) the 2003 version of the Sears credit card agreement did not apply to this litigation; (2) the 2000 version of the agreement was unenforceable because NAF was barred from arbitrating cases between consumers and businesses by a Minnesota consent decree; and (3) Sears's arbitration clause is unconscionable under both Arizona and Illinois law.

¶ 14    Sears filed a reply in support of the motion on November 1, 2011. Plaintiffs filed their surreply opposing arbitration on November 28, 2011.

¶ 15    The record further contains a transcript of proceedings for August 11, 2011, regarding the motion to compel arbitration, as well as a motion by Sears to strike exhibits related to plaintiffs' motion for summary judgment.[3] Sears objected to plaintiffs' use of a settlement agreement apparently reached in the California class action to support their motion for summary judgment. The court ruled it would disregard any use of the settlement agreement to imply any liability of Sears in the matter. The court did not rule on the motion to compel arbitration at that time.

¶ 16    On February 22, 2012, after hearing argument, the circuit court denied the motion to compel arbitration. The circuit court recited the reasons for its decision. The circuit court found that in the years between the filing of plaintiffs' complaints and the decision in *Concepcion*, there was "extensive litigation" in this case, involving dispositive motions challenging the pleadings, answers and affirmative defenses, the motion for class certification (which required discovery, briefing and a hearing), attempts to seek review of the class certification, the parties' cross-motions for partial or total summary judgment, and additional discovery matters which remained pending. The circuit court also referred to "conferences, including those even held by the [c]ourt for the purposes of trying to resolve this matter at an early date." Sears failed to file any affidavit to explain why it had not sought arbitration at an earlier date.

¶ 17    The circuit court rejected the argument that it would have been futile for Sears to assert their right to arbitrate prior to the *Concepcion* decision. The circuit court found Sears acted inconsistently with its right to arbitrate in the litigation. The circuit court also found plaintiffs would suffer prejudice at this stage of the litigation if the motion to compel arbitration was granted, "particularly in view of the litigation efforts, as well as mediation efforts, that the parties have engaged in throughout this litigation." Accordingly, the circuit court ruled Sears waived its right to arbitrate the claims involved in this litigation.

¶ 18    In addition, the circuit court ruled plaintiffs' claims were governed by the 2003 version of the Sears credit card agreement, with the exception of Woods, whose claims were governed by the 2000 version of the agreement. The circuit court further ruled plaintiffs failed to demonstrate the credit card agreements were unconscionable under either Arizona

---

[3]Plaintiffs assert they filed a consolidated motion for summary judgment on July 22, 2010, and Sears filed its response and cross-motion for summary judgment on March 30, 2011. Plaintiffs, however, cite to their own response opposing the motion to compel arbitration, which does not mention these dates.

or Illinois law. Moreover, the court specifically ruled the unavailability of NAF as a forum did not render the 2000 agreement as unenforceable.

¶ 19      The circuit court entered a written order on February 22, 2012, denying the motion to compel arbitration and stay proceedings. On March 22, 2012, Sears filed a notice of interlocutory appeal to this court.

¶ 20      DISCUSSION

¶ 21      On appeal, Sears contends the circuit court erred in ruling Sears waived its right to arbitrate and its assertion of the right to arbitrate was untimely. Plaintiffs argue the circuit court did not err on these points. Plaintiffs also assert alternate grounds to affirm, arguing, as they did in the circuit court: (1) the 2003 version of the Sears credit card agreement did not apply to this litigation; (2) the 2000 version of the agreement was unenforceable because NAF was barred from arbitrating cases between consumers and businesses; and (3) Sears's arbitration clause is unconscionable under both Arizona and Illinois law.

¶ 22      I. The Standard of Review

¶ 23      The parties disagree regarding the proper standard of review of this interlocutory appeal. Sears maintains the standard of review is *de novo*, while plaintiffs argue the standard is whether the trial court abused its discretion in denying the motion to compel arbitration.

¶ 24      This court has jurisdiction to review the circuit court's order denying the motion to compel arbitration pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010). See, *e.g.*, *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 419 (2007) (citing *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 448 (2004)). The rule generally allows for appeals from denial of injunctive relief. *Glazer's Distributors of Illinois, Inc.*, 376 Ill. App. 3d at 423. This court has "split on the issue of whether an abuse of discretion standard or *de novo* standard applies to cases such as this one." *Id.* A number of decisions from the First District of this court have determined an abuse of discretion standard applies to a review of the circuit court's decision regarding waiver of arbitration rights. *Id*. (and cases cited therein). In contrast, "[t]he Second, Third, and Fifth Districts of this court have determined that a *de novo* review is appropriate where the circuit court has determined the issue of waiver of the right to arbitration because the circuit court in such instances reviews undisputed facts and makes a waiver determination as a matter of law." *Id*. (and cases cited therein).

¶ 25      This split in authority may be reconciled by reference to general principles established by our supreme court. "[I]n an interlocutory appeal, the scope of review is normally limited to an examination of whether or not the trial court abused its discretion in granting or refusing the requested interlocutory relief." *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996). "However, where the question presented is one of law, a reviewing court determines it independently of the trial court's judgment." *Id*. Moreover, " 'where the exercise of discretion has been frustrated by the application of an erroneous rule of law, review is required to permit the exercise in a manner "consistent with the law." ' " *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 274 (1992) (quoting *People v. Brockman*,

143 Ill. 2d 351, 363 (1991)).

¶ 26    Accordingly, in interlocutory appeals of orders denying a motion to compel arbitration, questions of law are reviewed *de novo*, while any findings of fact are reviewed for an abuse of discretion in light of a proper understanding of the law. This approach is generally consistent with the standards of review applied by federal courts in cases involving the waiver of the right to arbitrate. See *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1001 (2003) (and cases cited therein). *De novo* consideration means we perform the same analysis a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). An abuse of discretion occurs only when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. See *People v. Ortega*, 209 Ill. 2d 354, 359 (2004); *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 27                         II. Waiver of the Right to Arbitrate

¶ 28    The FAA governs the enforceability of arbitration agreements in contracts involving interstate commerce. *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices & Products Liability Litigation*, 828 F. Supp. 2d 1150, 1157 (C.D. Cal. 2011) (*Toyota*); see 9 U.S.C. § 1 *et seq.* (1994). Section 3 of the FAA provides:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (1994).

Generally, under the FAA, "courts shall stay further proceedings and order arbitration if: (1) a valid agreement to arbitrate exists, and the (2) the agreement encompasses the dispute at issue." *Toyota*, 828 F. Supp. 2d at 1157. The first issue is generally a question of state law, while the second issue is generally one of federal substantive law.[4] *Id*. at 1157-58. "Although the FAA favors the enforcement of private arbitration agreements, 9 U.S.C. § 2, the court may refuse to enforce an arbitration agreement on the ground that the party seeking enforcement has waived such right." *Toyota*, 828 F. Supp. 2d at 1162 (and cases cited therein). Nevertheless, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

¶ 29    Federal courts considering purported waivers of the right to arbitrate have employed a

---

[4]Regarding the second issue, the parties may contract otherwise. See *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989). In this case, however, both versions of the Sears credit card agreement in this case contain arbitration clauses which refer to the FAA.

variety of overlapping approaches to the issue. *E.g.*, *In re Pharmacy Benefit Managers Antitrust Litigation*, 700 F.3d 109, 117 (3d Cir. 2012) (and cases cited therein); *Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (and cases cited therein); *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (and cases cited therein); *In re Tyco International Ltd. Securities Litigation*, 422 F.3d 41, 44 n.2 (1st Cir. 2005); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Indeed, some of these federal courts stress a determination of waiver must be based on the circumstances and context of the particular case. *In re Pharmacy Benefit Managers Antitrust Litigation*, 700 F.3d at 118; *In re Tyco International Ltd. Securities Litigation*, 422 F.3d at 44 (citing *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995)).

¶ 30    In this litigation, Sears adopts the approach taken by the Ninth Circuit, which holds "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher*, 791 F.2d at 694. Plaintiffs have not urged this court to adopt any alternative approach, but structure their response to meet the points Sears asserts. Although federal case law demonstrates a number of factors may be considered, the Ninth Circuit's approach is sufficiently broad for the purposes of this opinion. Accordingly, we turn to consider the factors discussed in *Fisher*.

¶ 31                    A. Knowledge of an Existing Right to Arbitrate

¶ 32    Sears does not deny the plain language of the agreements at issue grants Sears a right to demand arbitration. Rather, Sears argues it could not have successfully relied on the agreements to demand arbitration until the Supreme Court issued its decision in *Concepcion*. Thus, Sears asserts until the arrival of *Concepcion*, Sears did not "know" it had the right to demand arbitration.

¶ 33    In this regard, Sears believes this case is similar to *Fisher*. The Ninth Circuit in *Fisher* examined whether a defendant's decision not to file a motion to compel arbitration prior to the Supreme Court's rejection of the intertwining doctrine–which held when it was impractical or impossible to separate nonarbitrable from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over federal securities claims–constituted waiver. See *Fisher*, 791 F.2d at 695. Prior to the Supreme Court's decision in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985), the Ninth Circuit had approved of the intertwining doctrine and had said in *De Lancie v. Birr, Wilson & Co.*, 648 F.2d 1255 (9th Cir. 1981), arbitration should be denied where common law claims are intertwined with securities law violations. *Fisher*, 791 F.2d at 693. The defendant relied on the doctrine and the Ninth Circuit's decision in *De Lancie* in deciding not to file a motion to compel arbitration, because it would have been "futile" prior to the Supreme Court's ruling in *Byrd*. *Id*. The Ninth Circuit concluded there was no waiver in *Fisher* because the defendant was entitled to rely on the intertwining doctrine and that court's prior decisions in deciding it would be futile to file a motion to compel arbitration. *Id*. Because the

arbitration agreement was unenforceable before the Supreme Court's decision in *Byrd*, the Ninth Circuit held the defendant did not act inconsistently with a known existing right to compel arbitration and had not waived the right to arbitration. *Id*. at 697.

¶ 34    Sears argues *Concepcion* wrought a similar change in the law. In *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), the California Supreme Court held certain class action arbitration waivers were unconscionable under California law and should not be enforced. *Id*. at 1110 (quoting Cal. Civil Code § 1668 (West 1998)). In *Concepcion*, the United States Supreme Court abrogated the holding in *Discover Bank*, explaining the "overarching purpose" of the FAA is to "ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings" and requiring the availability of classwide arbitration "interferes with fundamental attributes of arbitration." *Concepcion*, 563 U.S.___, 131 S. Ct. at 1748. Accordingly, the *Concepcion* Court concluded the *Discover Bank* rule was preempted by the FAA. *Id*. at ___, 131 S. Ct. at 1753.

¶ 35    Sears argues, similar to the defendant in *Fisher*, it did not act inconsistently with a known existing right to compel arbitration. The Ninth Circuit, however, rejected a similar argument after the *Concepcion* decision. In *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 721 (9th Cir. 2012), the court ruled the futility of an arbitration demand prior to *Concepcion* was not clear cut. The Ninth Circuit noted "[i]n contemporaneous consumer litigation, litigants did succeed in compelling arbitration despite the existence of the *Discover Bank* rule." *Id*. (citing cases). The *Gutierrez* court concluded, "[e]specially because the [customer account agreement] did not prohibit class arbitration, a motion to compel arbitration was not inevitably futile under the prescribed case-by-case analysis." *Id*.

¶ 36    Similarly, in *Garcia v. Wachovia Corp.*, 699 F.3d 1273 (11th Cir. 2012), the Eleventh Circuit rejected the argument that any motion to compel arbitration would have been futile before the Supreme Court decided *Concepcion*. According to *Garcia*, "absent controlling Supreme Court or circuit precedent foreclosing a right to arbitrate, a motion to compel arbitration will almost never be futile." *Id*. at 1278. The *Garcia* court also rejected a more lenient "unlikely to succeed" standard, reasoning it would only encourage litigants to delay arbitration and undermine one of the basic purposes of arbitration, *i.e.*, the fast inexpensive resolution of disputes. *Id*. at 1279. Adopting the Eighth Circuit's position, the Eleventh Circuit concluded "a party must move to compel arbitration whenever 'it should have been clear to [the party] that the arbitration agreement was at least arguably enforceable.' " *Id*. at 1278 (quoting *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009)).

¶ 37    The District of Coulmbia Circuit took an analogous position in *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772 (D.C. Cir. 1987), which, like *Fisher*, addressed waiver of the right to arbitrate prior to the *Byrd* Court's rejection of the "intertwining doctrine." The District of Coulmbia Circuit noted it had never adopted the "intertwining doctrine," either explicitly or by implication. *Id*. at 776. Accordingly, the defendant "had no reason to believe that its right to arbitration was unenforceable." *Id*. at 776-77. Moreover, as the District of Coulmbia Circuit observed, "only three circuits had followed the intertwining doctrine, while three other circuits had expressly rejected it." *Id*. at 777 (citing *Byrd*, 470 U.S. at 216-17). The court ruled: "[i]n this legal climate, we fail to

see how [defendant's] assertion of its right to arbitrate the claims covered by its agreement with [plaintiff] would have been futile." *Id*.

¶ 38    The cases cited by Sears do not compel a contrary conclusion. Sears relies on *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967), which considered whether Curtis's failure to raise constitutional defenses in a libel case prior to *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), amounted to a knowing waiver. The Court generally stated "the mere failure to interpose such a defense prior to the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground." *Curtis Publishing Co.*, 388 U.S. at 143. In rejecting the waiver argument, however, the Court reasoned in relevant part:

> "Although our decision in *New York Times* did draw upon earlier precedents in state law [citation], and there were intimations in a prior opinion and the extra-judicial comments of one Justice, that some applications of libel law might be in conflict with the guarantees of free speech and press, there was strong precedent indicating that civil libel actions were immune from general constitutional scrutiny. Given the state of the law prior to our decision in *New York Times*, we do not think it unreasonable for a lawyer trying a case of this kind, where the plaintiff was not even a public official under state law, to have looked solely to the defenses provided by state libel law." *Id*. at 143-44.

Thus, the Court rejected waiver because the state of the law prior to *New York Times* indicated civil libel actions were immune from general constitutional scrutiny. Accordingly, *Curtis* does not support Sears's position.

¶ 39    Sears also cites *Big Horn County Electric Cooperative, Inc. v. Adams*, 219 F.3d 944, 954 (9th Cir. 2000). In that case, however, the Ninth Circuit observed *Strate v. A-1 Contractors*, 520 U.S. 438 (1997), implicitly overruled *Burlington Northern R.R. Co. v. Blackfeet Tribe of the Blackfeet Indian Reservation*, 924 F.2d 899, 904 (9th Cir. 1991). *Big Horn County Electric Cooperative* presented a situation similar to *Curtis*, in which it would have been futile to assert an argument in light of the then-prevailing case law. Thus, *Big Horn County Electric Cooperative* is also consistent with the Ninth Circuit's later opinion in *Gutierrez*.

¶ 40    Sears next cites *Ackerberg v. Johnson*, 892 F.2d 1328 (8th Cir. 1989), in which the Eighth Circuit stated "especially in cases in which any delay in making a motion to compel arbitration is based on unfavorable or uncertain law, waiver should not be found." *Id*. at 1332. More recently, in *Southeastern Stud & Components, Inc.*, the Eighth Circuit discussed this aspect of *Ackerberg*:

> "AEDBS points to *Ackerberg v. Johnson*, 892 F.2d 1328 (8th Cir. 1989), in support of its argument that it did not knowingly waive its right to arbitrate because the 'delay in filing a motion to compel arbitration was based on unfavorable or uncertain law.' (Appellant's Br. at 22.) In *Ackerberg*, the defendants failed to file a motion to compel arbitration on a claim related to the Securities Act of 1933, 15 U.S.C. §§ 77a to 77aa, in spite of an arbitration agreement. *Ackerberg*, 892 F.2d at 1332. At the time the complaint was filed, the issue was controlled by *Wilko v. Swan*, 346 U.S. 427, 74 S. Ct. 182, 98 L. Ed. 168 (1953), which prohibited arbitration of claims made under the 1933 Act. However, after the complaint was filed, the Supreme Court reversed *Wilko* in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 104

-11-

L. Ed. 2d 526 (1989). After *Rodriguez de Quijas*, the defendants moved to compel arbitration on the 1933 Act claims, but the district court held that the defendants waived their right to arbitration by acting inconsistently with their right to arbitration by participating in the litigation process. *Ackerberg*, 892 F.2d at 1331. We disagreed, explaining that before *Rodriguez de Quijas*, the defendants correctly relied on *Wilko* for the proposition that their 1933 Act claims were not arbitrable, and a motion to compel arbitration on those claims would have been futile. *Id*. at 1332. Because the defendants moved to compel arbitration 'as soon as the law appeared to allow an arbitration procedure' and because any motion to compel arbitration prior to that would have been futile, we held that the defendants did not waive their right to arbitrate the 1933 Act claims. *Id*. at 1333." *Southeastern Stud & Components, Inc.*, 588 F.3d at 968.

Given this discussion, it appears the Eighth Circuit no longer adheres to the *Ackerberg dicta* regarding "uncertain" law. See *Garcia*, 699 F.3d at 1278 (quoting *Southeastern Stud & Components, Inc.*, 588 F.3d at 967).

¶ 41    Sears further cites *Fisher*, overlooking the Ninth Circuit's subsequent rejection of its argument in *Gutierrez*.

¶ 42    In addition, Sears relies on a number of unpublished federal district court decisions. In the interest of uniformity, Illinois courts give considerable weight to the decisions of lower federal courts interpreting federal statutes. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 35. However, this court has often declined to consider unpublished federal decisions. See, *e.g.*, *Horwitz v. Sonnenschein Nath & Rosenthal, LLP*, 399 Ill. App. 3d 965, 976 (2010); *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009). In this case, the published federal appellate decisions obviate any need to consider unpublished federal district court decisions.[5]

¶ 43    In short, the question of whether Sears had a known right to arbitrate turns on the question of whether it would have been futile for Sears to invoke its right to arbitration prior to the decision in *Concepcion*. Absent controlling precedent foreclosing a right to arbitrate, a motion to compel arbitration will almost never be futile. See *Garcia*, 699 F.3d at 1278. Thus, "a party must move to compel arbitration whenever 'it should have been clear to [the party] that the arbitration agreement was at least arguably enforceable.' " *Id*. (quoting *Southeastern Stud & Components, Inc.*, 588 F.3d at 967). Accordingly, we examine whether the agreements at issue were at least arguably enforceable under the controlling law at the outset of this litigation.

¶ 44    As previously noted, the question of whether a valid agreement to arbitrate exists is

---

[5]For the purpose of completeness, we note: (1) two of the unreported decisions cited are from the Northern District of California and conflict with the Ninth Circuit's decision in *Guitierrez*; (2) two more unreported decisions predate 2007 and thus cannot be cited as precedent even in federal court (Fed. R. App. P. 32.1); (3) the remaining unreported decision, *Valentine v. WideOpen West Financial, LLC*, No. 09-C-07653, 2012 WL 1021809 (N.D. Ill. Mar. 26, 2012), addresses the waiver issue in a single paragraph and runs contrary to the detailed analyses found in the federal appellate decisions previously discussed in this opinion.

generally a question of state law. *Toyota*, 828 F. Supp. 2d at 1157-58. The credit card agreements in this case specifically provide they are entered into in the state of Arizona and, to the extent state law applies, the law of Arizona is to be applied. *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 116 (2003).

¶ 45     In its brief, Sears acknowledges "[t]here is a dearth of Arizona law addressing the enforceability of arbitration provisions that include class action waivers." In fact, Sears does not cite any decision from any Arizona state court addressing the issue. Instead, Sears discusses cases from other courts addressing the issue. Moreover, not all of these other courts were required to attempt to apply Arizona law to decide the enforceability of the arbitration provisions including class action waivers. Three of these cases, however, involved Sears asserting its right to enforce arbitration agreements similar to those at issue in this litigation.

¶ 46     For example, in *Vigil v. Sears National Bank*, 205 F. Supp. 2d 566 (E.D. La. 2002), the plaintiff consumer argued an arbitration clause similar to the one in this case was unconscionable because it eliminated the right to a jury trial and the right to bring a class action. *Id*. at 569. Sears argued both federal and Arizona law mandated the enforcement of the arbitration clause. *Id*. The *Vigil* court also noted "plaintiff can cite to no court decision that has found such clauses to be unconscionable for the argued reasons under Arizona or any other law." *Id*. at 573. Thus, relying on decisions from the Eleventh Circuit and a federal district court in Texas, the *Vigil* court concluded the arbitration clause was not unconscionable under Arizona law. *Id*.

¶ 47     In *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862 (Cal. Ct. App. 2002), the California Court of Appeal ruled the class action waiver in the defendant credit card company's arbitration agreement was both procedurally and substantively unconscionable under California law. Faced with the options of either closing his account or accepting the credit card company's "take it or leave it" terms, plaintiff, the *Szetela* court ruled, established procedural unconscionability despite the fact he could have simply taken his business elsewhere. *Id*. at 867. The *Szetela* court also held the class action waiver was substantively unconscionable because it gave the advantage to the bank, where customers such as the proposed class members would be essentially prevented "from seeking redress for relatively small amounts of money, such as the $29 sought by [the plaintiff]." *Id*. The court found this "manner of arbitration" was harsh and unfair, and violated both the legislature's stated policy of discouraging unfair business practices, as well as the public policy of promoting judicial economy, which the court noted is inherent in the procedural mechanism of the class action. *Id*. at 868.

¶ 48     In *Hutcherson*, the issue was whether an amendment to a Sears credit card agreement adding arbitration clauses similar to those in this case was unconscionable. Similar to *Vigil*, "[n]either party cite[d] to, nor did we find, an Arizona case addressing whether an amendment adding an arbitration agreement to a credit card agreement such as the one here was unconscionable." *Hutcherson*, 342 Ill. App. 3d at 117. This court, citing federal cases from other jurisdictions, as well as decisions from Alabama and Ohio, ruled the addition of the arbitration provision was not procedurally unconscionable under Arizona law. *Id*. at 118-20. The court, relying on *Vigil* and other decisions–and rejecting the reasoning of *Szetela*–also concluded the agreement, which included a class action waiver, was not so one-

sided or oppressive as to render the agreement substantively unconscionable under Arizona law. *Id*. at 124.

¶ 49    In *Sears Roebuck & Co. v. Avery*, 593 S.E.2d 424 (N.C. Ct. App. 2004), the court, while acknowledging a lack of Arizona law on point, rejected the reasoning in *Hutcherson* and *Vigil*. Instead, the *Avery* court relied in part on California decisions regarding standardized contracts and modification of contracts. *Id*. at 429. The court concluded: "Because the arbitration clause was a wholly new term that did not fall within the universe of subjects included in the original agreement, Sears did not have authority under its 'Change of Terms' provision to condition continued use of its credit card on acceptance of the arbitration clause." *Id*. at 434.[6]

¶ 50    As discussed earlier, in 2005, the California Supreme Court, adopting the reasoning in *Szetela*, held certain class-action arbitration waivers were unconscionable under California law and should not be enforced. *Discover Bank*, 113 P.3d at 1110.

¶ 51    In *Cooper v. QC Financial Services, Inc.*, 503 F. Supp. 2d 1266, 1286 (D. Ariz. 2007), the federal district court considered whether a class action waiver in an arbitration agreement was unconscionable under Arizona law. The *Cooper* court stated:

> "It is well-established among the Arizona courts that 'if Arizona law has not addressed an issue, we "look approvingly to the laws of California," especially when interpreting a similar or identical statute. The caveat to that principle, however, is that we "follow the California cases in so far as their reasoning is sound." ' " *Id*. at 1285 (quoting *Moore v. Browning*, 50 P.3d 852, 860 (Ariz. 2002), quoting *State v. Vallejos*, 358 P.2d 178, 182 (Ariz. Ct. App. 1960)).

Thus, following *Szetela* and *Discover Bank*, the judge in *Cooper* concluded the class action waiver was unconscionable, severed the waiver and directed the action to proceed to class arbitration. *Cooper*, 503 F. Supp. 2d at 1290-01; see also *In re DirecTV Early Cancellation Litigation*, 738 F. Supp. 2d 1062, 1081 (C.D. Cal. 2010) (similarly concluding Arizona would follow California law on this issue).

¶ 52    Sears asserts "California case law was and still is the only and most valid predictor of how an Arizona court would decide this question under Arizona law." Accordingly, Sears concludes *Concepcion* represented a change in Arizona law excusing its delay in seeking arbitration of the claims here.

¶ 53    The foregoing case law, however, points toward the opposite conclusion. The complaints at issue here were filed in 2001, 2002 and 2003. During this period, there was no controlling legal authority in Arizona regarding the enforceability of class action waivers in arbitration agreements. Moreover, in *Vigil* and *Hutcherson*, courts purporting to apply Arizona law to Sears credit card agreements held similar waivers were not unconscionable. Sears now seemingly disavows the very decisions Sears sought in *Vigil* and *Hutcherson*, claiming California law should have been applied instead. Sears overlooks *Szetela* was not decided

---

[6]Given the nature of this case, we note in passing the *Avery* court also concluded in *dicta* Sears waived its right to arbitrate by filing suit against Avery. *Id*. at 434-35.

when the complaint was filed in the Bovay litigation and was not adopted by the California Supreme Court until 2005, years after these complaints were filed. Sears also overlooks the fact that no Arizona state court ever adopted *Szetela* or *Discover Bank*. Sears cannot demonstrate it would have been futile for Sears to assert its right to arbitrate in these cases, given that Sears itself successfully defended at least two of three challenges to its arbitration agreements during the early years of this litigation. It should have been clear to Sears the arbitration agreements were at least arguably enforceable, which should have required Sears to move to compel arbitration.

¶ 54 In short, the circuit court did not err in ruling Sears knew of its right to arbitrate and could have asserted it for years after these complaints were filed, but decided against proceeding accordingly. *Concepcion* abrogated the holding in *Discover Bank*, and may affect future decisions regarding class action waivers, even outside California. Nevertheless, Sears has failed to demonstrate it would have been futile to assert its right to arbitrate prior to the decision in *Concepcion*.

¶ 55 Following oral argument in this case, Sears obtained leave to cite *American Express Co. v. Italian Colors Restaurant*, 570 U.S. ___, 133 S. Ct. 2304 (2013), as supplemental authority to argue: (1) "courts must 'rigorously enforce' arbitration agreements according to their terms" (*id*. at ___, 133 S. Ct. at 2309 (quoting *Dean Witter Reynolds Inc.*, 470 U.S. at 221)); and (2) the United States Supreme Court "specifically rejected the argument that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal system' " (*American Express Co.*, 570 U.S. at ___, 133 S. Ct. at 2312 (quoting *Concepcion*, 563 U.S. at ___, 131 S. Ct. at 1753)).

¶ 56 Neither of these points, however, assists Sears. First, while courts are required to enforce arbitration agreements according to their terms, the agreements here provided: "Arbitration may be elected at any time, regardless of whether a lawsuit has been filed or not, unless *** the other party would suffer substantial prejudice as a result of the delay in demanding arbitration." Thus, when the trial court found plaintiffs would suffer substantial prejudice as a result of Sears's 10-year delay in demanding arbitration, it was rigorously enforcing a term of the arbitration agreement. *American Express Co.*, 570 U.S. at ___, 133 S. Ct. at 2309 (quoting *Dean Witter Reynolds Inc.*, 470 U.S. at 221).

¶ 57 Second, while the United States Supreme Court "specifically rejected the argument that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal system' " (*American Express Co.*, 570 U.S. at ___, 133 S. Ct. at 2312 (quoting *Concepcion*, 563 U.S. at ___, 131 S. Ct. at 1753), the trial court did not decide these cases on this public policy ground. Instead, the trial court followed the letter of the agreement, ruling in part Sears's delay in demanding arbitration created substantial prejudice to the plaintiffs. We now turn to consider whether the trial court erred in ruling the delay was substantially prejudicial to the plaintiffs.

¶ 58           B. Inconsistent Acts Resulting in Prejudice to the Opponent

¶ 59 Sears's brief addresses the remaining factors discussed in *Fisher*, *i.e.*, acts inconsistent with an existing right and prejudice to the party opposing arbitration resulting from such

inconsistent acts, in an abbreviated fashion. Sears's arguments largely proceed from the premise it did not have an existing right to arbitrate prior to *Concepcion*. As the circuit court did not err in ruling Sears had a known right to arbitrate from the inception of these lawsuits, the circuit court did not abuse its discretion in finding Sears's acts were inconsistent with the known right. Given that Sears successfully asserted its right to arbitrate in *Vigil* and *Hutcherson* (and unsuccessfully asserted this right in *Avery*), the acts undertaken by Sears for nearly a decade of litigation in the circuit court are acts entirely inconsistent with a known right to demand arbitration. Indeed, while Sears now suggests *Hutcherson* was incorrect in its attempt to discern Arizona law on the enforceability of the class action waiver in its arbitration agreements, the decision of this court could not have been ignored by the circuit court in this litigation.

¶ 60    Sears additionally argues plaintiffs cannot demonstrate prejudice based on the time and money spent pursuing litigation plaintiffs initiated themselves. Sears primarily relies on *Fisher*, which refers to litigation expenses as a self-inflicted wound. *Fisher*, 791 F.2d at 698. The *Fisher* court, however, also noted plaintiffs in that case "were parties to an agreement making arbitration of disputes mandatory" and violated the agreement by filing their lawsuit. *Id*. In contrast, the credit card agreements here provide for arbitration upon election of either party. Accordingly, plaintiffs' litigation expenses cannot be characterized as a self-inflicted wound in this case.

¶ 61    Lastly, Sears asserts in a footnote to its brief various litigation expenses currently incurred by plaintiffs ultimately would not be paid by plaintiffs. This assertion, however, is supported only by Sears's reference to plaintiffs' failure to contradict Sears's prior assertion in their surreply to Sears's reply brief on the motion to compel. On neither occasion did Sears present evidence or argument in support of its assertion.

¶ 62    The circuit court found plaintiffs were prejudiced in view of the extensive litigation and mediation which occurred during the first 10 years of these disputes. In determining whether the party opposing arbitration was prejudiced by delay, federal courts tend to consider: (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in nonmerits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery. See, *e.g.*, *In re Pharmacy Benefit Managers Antitrust Litigation*, 700 F.3d at 117.

¶ 63    In this case, the record establishes Sears's lengthy delay in seeking arbitration. The record sets forth that Sears filed a motion to dismiss and a cross-motion for summary judgment. Sears also participated in pretrial discovery, including depositions of the plaintiffs. The trial judge found Sears further participated in settlement and mediation conferences. Sears zealously litigated the class certification. Given this record, Sears's unsupported assertion plaintiffs ultimately would not bear certain litigation expenses fails to establish the circuit court abused its discretion in finding plaintiffs were prejudiced in this case.

¶ 64    In short, Sears failed to demonstrate the circuit court erred in denying the motion to

-16-

compel arbitration. Accordingly, we need not address the the parties' alternative arguments on appeal.

¶ 65                                    CONCLUSION

¶ 66       In sum, we conclude the circuit court did not err in ruling Sears had a known right to demand arbitration when plaintiffs' filed their complaints. Sears failed to establish it would have been futile for Sears to assert its right to arbitrate in these cases. Accordingly, the circuit court did not abuse its discretion in finding Sears acted inconsistently with its known right to arbitrate and prejudiced the plaintiffs by actively litigating the case for years. For all of the aforementioned reasons, the order of the circuit court of Cook County denying the motion to compel arbitration and stay proceedings is affirmed.

¶ 67       Affirmed.